Harris *v.* Harris.

---

## AARON HARRIS *vs.* EPHRAIM HARRIS and others.

The section of the revised statutes relative to the proof of wills as lost or destroyed wills, provides one common and invariable rule in regard to the validity or effect of lost or destroyed wills taking effect after the passage of the act, viz: 1. That the loss or destruction must have occurred after the death of the testator, unless it happened fraudulently in his lifetime. 2. That in consideration of the importance of the instrument, and the uncertainty of parol testimony, its contents shall be clearly and distinctly established by two credible witnesses.

The language of the statute is general and unqualified, and the provision was intended as a rule of evidence of universal application to all subsequent cases, prescribing certain indispensable prerequisites to the proof, in any tribunal, for any purpose, of wills alleged to have been lost or destroyed; and is not to be limited to affirmative proceedings taken directly for the purpose of establishing such a will.

Hence, an instrument cannot be proven and established in any form, for any purpose, or between any parties, as a lost or destroyed will, unless its provisions are clearly and distinctly proved by at least two witnesses, or a correct copy or draft as an equivalent or substitute for one of them.

Harris *v.* Harris.

The questions involved in a suit brought to establish a will as a lost or destroyed will, and in a subsequent action of partition between the same parties where such will is sought to be established as a lost or destroyed will, by a party claiming under the same, are identical. The same proof is required, to establish the will, in either case; and the question having been once passed upon by a competent tribunal, must be deemed at rest, and the former judgment conclusive. GOULD, J. dissented.

THE plaintiff, and the defendants Ephraim Harris, William Harris and Phebe Burnham, are the children and only heirs at law of John Harris, late of the town of Greenfield, in the county of Saratoga, deceased. The said John Harris died on the 8th day of February, 1859, at his residence in said town, seised of both real and personal estate, and seised of the lands described in the complaint in this action.

In July, 1856, the said John Harris made a last will and testament in due form of law. The terms of said will are specifically set forth in the case, and appear by the testimony of Elihu Wing, the writer thereof, and one of the subscribing witnesses thereto. No other witness was cognizant of, or testified to, the provisions of the will. The scrivener's draft or memorandum of instructions for drawing the will was given in evidence, but it was defective in several particulars, especially in regard to the devises and bequests to Ephraim Harris, about one half of each of the lines containing which was torn off, subsequently, as supposed waste paper, by a third person; thus making a portion of the devises and bequests and provisions unintelligible and imperfect.

The memorandum contained no statement of the charge upon Ephraim of Mrs. Burnham's legacy, in the event it was not paid by the testator. Nor did it on its face purport to be a perfect draft or copy of a will, or contain an introduction or close indicating its testamentary character. By the contents or provisions of this will, the whole real estate of the said John Harris was devised to his two sons, the defendants Ephraim and William Harris, and there was no devise

of any portion of his real estate to the plaintiff, Aaron Harris, or to the defendant Phebe Burnham.

John Harris by said will bequeathed to his daughter, the defendant Phebe Burnham, the sum of $1125, and therein provided that if he in his lifetime paid her that sum, it was to be in full of the legacy therein bequeathed to her. On the 9th day of September, 1858, John Harris paid to said Phebe Burnham the said sum of $1125, and took her receipt therefor.

The said John Harris at the time he executed said will resided with his son, the defendant Ephraim Harris, and continued so to reside with Ephraim until his death, on the 8th day of February, 1859. The will, after it was executed, was inclosed in an envelope, and was taken by John Harris to his residence, and placed in a box in a small upper room, called a clothes-press, in the house where he lived, where it remained and where it was seen as late as the 4th day of February, 1859, the morning that John Harris was taken ill.

After the death of John Harris, search was made for the will. It was not found, and the defendants Ephraim Harris and William Harris, and Charles Harris, the testator's grandson, commenced an action in the supreme court, by summons and complaint, against the present plaintiff, Aaron Harris, and the defendants William Burnham and Phebe Burnham his wife, alleging in their complaint the making and existence of the aforesaid will by John Harris, and setting forth its terms, alleging its loss, and charging its loss and destruction to Aaron Harris, (the present plaintiff,) and therein praying the judgment of the court that the said will be admitted to probate as a lost will. Issue was joined in that action. Such action, and the issues therein joined, were referred to the Hon. E. H. Rosekrans, as sole referee, who, after hearing the testimony, found and reported therein as facts: "That John Harris, deceased, made and published his last will and testament in due form of law, to pass real and personal estate. That said will was in existence at the time of

the death of said John Harris, and was fraudulently destroyed after his death by the said Aaron Harris. That the provisions of said will were not proved by two witnesses, and that no correct draft or copy thereof was proved; that the same could not be allowed to be proved as a lost or destroyed will, under article 3d, chapter 6th, of part second of the revised statutes; and that the complaint of the plaintiffs should be dismissed without costs to either party."

A judgment was entered upon the report of the referee, on the 2d day of February, 1860. After such judgment was entered, and in March, 1860, this action was commenced by Aaron Harris against the present defendants, the plaintiff setting up in his complaint the decease of the said John Harris; that he was seised of the premises therein mentioned, (being the same premises devised to William and Ephraim Harris by the said will,) and claiming as relief that the said lands be partitioned.

The defendants William Harris and Ephraim Harris, in their answers, allege the making and publishing of said will, setting forth its terms, alleging that they are the owners of the said lands in the manner specified in the will, and that the plaintiff, Aaron Harris, and the defendant Phebe Burnham, have no interest therein. They also set forth the payment to the defendant Phebe Burnham of the said $1125, (being the sum bequeathed to her by the said John Harris by said will,) and the giving by her of said receipt, and ask that the complaint be dismissed. The defendants Phebe Burnham and William Burnham denied the matters set forth in the complaint.

The plaintiff replied to the answer of the defendants Ephraim Harris and William Harris, and their wives, and set up the proceedings and judgment in the case tried before Justice ROSEKRANS. Upon these issues the action was tried at the Saratoga special term in July, 1860, before Justice POTTER, without a jury, whose decision or finding is con-

tained in the case. The finding of Justice POTTER sustains the foregoing statement.

For the purpose of aiding to prove the contents of the will, the defendants offered in evidence a memorandum, previously made by the witness Elihu Wing, the draftsman who drew the will, of its provisions, and made for the purpose of enabling him to draw it. A portion of the contents had been torn off the memorandum. The plaintiff objected to its reception, but the objection was overruled and the same was received in evidence. The defendants also offered in evidence the receipt of the defendant Phebe Burnham, dated the 9th day of September, 1858, executed and delivered to the testator before his death, for $1125, which was objected to by the plaintiff, but the objection was overruled and the receipt admitted in evidence.

The conclusions of law of Justice POTTER are contained in the case, and were, in substance, 1st. That the said John Harris, deceased, in July, 1856, made his last will and testament relating to both real and personal estate. That it was duly executed by him with all the forms and requirements of the statutes, and that said will was in full force and effect, unrevoked by the said testator, at the time of his death. 2d. That by the terms of the said will, the plaintiff in this action had no interest in the real estate of the said testator that gave him the right to institute an action for the partition thereof. 3d. That by the terms of the said will, and payment of the amount bequeathed to her; and acceptance of the same, the said Phebe Burnham had no right or interest in the real estate of the testator. 4th. That the judgment in the action tried before Justice Rosekrans as referee is not conclusive as to the validity of said will, and is ineffectual against the devisees of the real estate of John Harris in establishing their title to said real estate, in this action. 5th. That the plaintiff's complaint in this action be dismissed, and that the defendants have their costs.

A judgment was entered in accordance with this decision, from which the plaintiff appealed to the general term.

*William Hay* and *L. B. Pike*, for the plaintiff, (appellant.)

*John H. Reynolds, A. Pond* and *W. T. Odell*, for the defendants, (respondents.)

HOGEBOOM, J. The parties to this suit are the children of John Harris, deceased. The action is for partition of land; and the plaintiff claims an equal division of the same among the parties as tenants in common, by reason of the death of their father intestate. The defendants Ephraim Harris and William Harris deny the intestacy and tenancy in common, and set up title in themselves, respectively, in several and distinct portions of the land sought to be partitioned, by virtue of a devise thereof to them by the will of their said father, John Harris. The plaintiff replies to the defendants' answer, denying the same, and alleging that previous to the commencement of this action, said defendants commenced an action in the supreme court against the plaintiff and the other defendants to establish the said will as a lost or destroyed will, and that such proceedings were had therein that judgment was duly entered in said action that said will could not be proved as a lost or destroyed will, and that said defendants had no interest in the property described in the complaint, by virtue of said will.

This was the issue to be tried, and the proofs showed that such former action was instituted, the judgment therein being that the will be not allowed to be proved as a lost or destroyed will, and that the plaintiff's complaint be dismissed without costs to either party. The report of the referee before whom the said cause was tried, and on which report the judgment was entered, found as facts in that case, (substantially as the judge in this case has found,) that John Harris did make and publish such last will and testament in due

form of law to pass real and personal estate; that said will was in existence at the time of the death of the said John Harris, and was fraudulently destroyed after his death by the said Aaron Harris; that the provisions of said will were not proved by two witnesses, and that no correct draft . or copy thereof was proved; and that therefore, as a conclusion of law from said facts, the said will could not be allowed to be proved as a lost or destroyed will, under article third, chapter sixth, of part second of the revised statutes.

The important question thus presented is, therefore, whether the judgment in the former action is conclusive in this ; for I agree with my brother GOULD that if it is not, and if the provisions of the revised statutes above referred to are limited to direct proceedings for the establishment of a lost or destroyed will, the result to which Mr. Justice POTTER arrived on the trial of this action was well warranted by the facts, and the judgment ought to be affirmed.

The general rule on this subject is well known to be that a former judgment of the same court, or of a court of concurrent jurisdiction, directly upon the point in issue, is, as a plea in bar or as evidence, conclusive between the same parties, or others claiming under them, upon the same matter directly in question in a subsequent action or proceeding. (*Gardner* v. *Buckbee,* 3 *Cowen,* 120. *Burt* v. *Sternburgh,* 4 *id.* 559. *Wood* v. *Jackson,* 8 *Wend.* 9. *Etheridge* v. *Osborn,* 12 *id.* 399. *Embury* v. *Conner,* 3 *Comst.* 511. *Doty* v. *Brown,* 4 *id.* 71. *Ehle* v. *Bingham,* 7 *Barb.* 494. *Kingsland* v. *Spalding,* 3 *Barb. Ch. Rep.* 341.)

Such judgment or adjudication is final and conclusive, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided, as incident to or essentially connected with the subject matter of the litigation, and every matter coming within the legitimate purview of the original action both in respect to matters of claim and of defense. (*Bruen* v. *Hone,* 2 *Barb.* 586. *Embury* v. *Conner,* 9 *Comst.* 511, 522. *Haeir*

v. *Baker*, 1 *Seld.* 357. *Davis* v. *Tallcot*, 2 *Kern.* 184. *Hayes* v. *Reese*, 34 *Barb.* 156.)

In some cases, for example, where the grounds upon which the judgment proceeded do not appear from the record itself, and where from the record itself it cannot be determined whether a particular claim or security was involved in the litigation, it is competent to prove the same by parol testimony, provided they be such as might have been given legitimately in evidence under the issue, and must have been directly and necessarily in question as the grounds of the verdict. (*Wood* v. *Jackson*, 8 *Wend.* 9. *Lawrence* v. *Hunt*, 10 *id.* 80. *McKnight* v. *Dunlop*, 4 *Barb.* 36, 44. *Young* v. *Rummell*, 2 *Hill*, 481. *Dunckel* v. *Wiles*, 1 *Kern.* 420.)

The former action was instituted to establish the will in question as a lost or destroyed will, under the authority of 2 *R. S.* 67, 68, §§ 63 *to* 67, inclusive. These sections confer upon the court of chancery—now the supreme court—where a will shall have been lost or destroyed, the same power to take proof of the execution and validity of the will and to establish the same, as in the case of lost deeds.

The decree establishing the will is to be recorded by the surrogate, and letters testamentary or of administration with the will annexed are to be issued thereon by him. To entitle a will to be allowed to be proved as a lost or destroyed will, it must be proved to have been in existence at the death of the testator, or to have been fraudulently destroyed in his lifetime ; and its provisions must be clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being equivalent to one witness. It was under this statute that the proceedings were had, in the action first commenced, and they failed of success for want of the requisite amount of proof. There was a lack of the requisite number of witnesses to establish a compliance with the statutory conditions. And as the suit was an equitable action, and the complaint was dismissed without incorporating in the judgment a clause that it should be without prejudice to

a new action for the same cause, it is probably conclusive upon the parties, that for the purposes intended by the statute, the will can never hereafter be established. (*Coit* v. *Bland,* 22 *How. Pr. Rep.* 2.)

The important question is as to the effect of the adjudication; whether it is that there is no valid will of the testator, none that can take effect for any purpose, none that can be proved according to the forms of the common law, none that can ever be established in any action in relation to lands between the parties to such an action, and for the purposes of such an action; or, whether it is, that no will has been or can be sufficiently proved to establish it as a lost or destroyed will for the purposes of the statute, that is, for the purposes of record and of probate, for the ordinary purposes of surrogate proof and action, for the purposes of granting letters testamentary or of administration thereon, as an instrument of evidence, good when thus established, for all purposes and all parties.

I was at first inclined to think the latter purposes were the only ones contemplated by the statute, and that on a trial at law, or in an action for partition, the case was still open, for the proof of the will, for the purposes of the action, to the ordinary evidence admissible for the purpose of proving instruments which are lost or destroyed; that is, that secondary evidence of the contents was admissible, and if it made out satisfactory proof of the contents of the instrument, and of a compliance with the statutory requisites necessary to give validity to any will, then that the will as between the parties to the action, and for the purposes of the action, was to be deemed established. It almost seemed to be an unjust discrimination in favor of wills actually in existence and against those accidently lost or destroyed, or fraudulently so without fault on the part of parties interested therein, to require for the latter, beyond the former, additional proof beyond such as satisfactorily established such loss or destruction and the contents of the instrument, to require what is

not required in ordinary cases, that its provisions should be established by at least two credible witnesses. But upon a more deliberate consideration of the terms of the statute in question, I am convinced that my first impressions were erroneous.

By 2 *R. S.* 68, § 74, [67,] it is provided, that " No will of any testator, who shall die after this chapter shall take effect as a law, shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the lifetime of the testator ; nor unless its provisions shall be clearly and distinctly proved by at least two credible witnesses—a correct copy or draft being deemed equivalent to one witness."

I am of opinion that this statute prescribes one common and invariable rule in regard to the validity or effect of lost or destroyed wills taking effect after the passage of the act ; that is, 1. That the loss or destruction must have occurred after the death of the testator, unless it happened fraudulently in his lifetime. 2. That in consideration of the importance of the instrument and the uncertainty of parol testimony, its contents shall be clearly and distinctly established by two credible witnesses.

I have come to this conclusion, for the following reasons :

1. The provisions of this section appear to be general in their nature—intended to be applicable to all wills coming into operation since the revised statutes—and not from the context or from the apparent object of the statute restricted to proceedings initiated for the purpose of proving and establishing the instrument as a record, or as the foundation for the administration of an estate. The language is general and unqualified, and occurs after all essential directions have been prescribed for the mere *mode* of proceeding in probating such a will ; and seems to be intended as a rule of evidence of universal application to all subsequent cases, prescribing certain

indispensable prerequisites to the proof, in any tribunal, for any purpose, of wills alleged to have been lost or destroyed.

Would it be claimed that since the passage of this act a will could be proved as a lost or destroyed will, either in equity or at common law—either for the general purposes of probate and record, or in an action of ejectment between the parties to the action—unless it was made positively or satisfactorily to appear that the will was in actual existence at the death of the testator, or fraudulently destroyed before that time? If not, then why are not the subsequent clauses of the section, as to the number of necessary witnesses, equally applicable to all cases and to all tribunals and between all parties where the question can possibly arise.

2. I draw this conclusion also from a consideration of other sections of the revised statutes in regard to wills. Section 42 (2 *R. S.* 64) prescribes the mode—the only mode—in which a will can be *revoked* or *canceled ;* and provides that when the cancellation for the purpose of revocation is by being burnt, torn, canceled, obliterated or destroyed by another person than the testator, but by his direction and consent, such direction and consent and the fact of such injury or destruction shall be proved by at least two witnesses. Can it be doubted that this is a rule of evidence applicable to all cases and all contingencies—to every forum and every form of proceeding? Would a court of common law, in an action of ejectment, venture to hold that evidence of such revocation, established by less than two witnesses, would suffice for a verdict or judgment even as between the parties? I apprehend not.

Various other provisions in regard to wills, of a general nature and obviously designed for universal application, are found interspersed among those sections of the revised statutes and amendatory acts which prescribe the mode of proceeding to prove a will before surrogates' courts. It may sometimes be a little difficult to determine whether a particular provision was designed for universal application or for

Harris *v.* Harris.

the routine of proceeding in the probate court; but I know of no other mode of determining the question than by considering the language of the statute, its apparent object, the context, and instituting a comparison with other sections of a kindred character.

3. I draw the same conclusion from a consideration of the *confusion* and *inconsistency* which would arise from a contrary determination. If the provision in question is limited to affirmative proceedings taken directly for the purpose of proving and recording the will and the consequent administration of the estate, then one rule may obtain in these proceedings and a different and inconsistent one in the courts of common law. Then a will of real and personal estate may, as in this very case is attempted to be done, be established between parties to an action of partition or of ejectment and be conclusive upon them, which, when attempted to be set up as a lost or destroyed will by proceedings having that object in view, between precisely the same parties, shall be utterly ineffectual for such purpose. As a consequence intestacy may be decreed in the probate court, and an equal distribution of the personal property be made among the children, founded upon the theory of their equal participation in the real estate by the laws of descent; when an action of ejectment and an application of the rules of the common law to the proof of wills and of lost instruments may give the whole real estate to a child, who received such a share of the testator's bounty by virtue of the provisions of the lost will, solely in consideration of the fact that by virtue of other provisions of the same instrument his brothers and sisters became the legatees of the entire personal estate. I do not think this was intended by the legislature, and I am therefore forced to conclude that under the revised statutes an instrument cannot be proven and established in any forum, for any purpose, or between any parties, as a lost or destroyed will, unless its provisions are clearly and distinctly proved by at least two

witnesses, or a correct copy or draft as an equivalent or substitute for one of them.

If these views are correct, then the question involved in both actions is similar and identical. The same proof is required to establish the will in either case, and the question having been once passed upon by a competent tribunal, between the same parties, must be deemed at rest and no longer open to contestation.

But if from the peculiar language of the judgment in question, or from a consideration of the effect of a dismissal of the complaint under the code, (*see Coit* v. *Bland,* 22 *How.* 2,) it should be deemed that the former judgment was only equivalent to a nonsuit, and that the question is therefore still open upon the merits, I concur with all the judges who have examined the question—Justice ROSEKRANS, who decided the first action; Justice POTTER, who pronounced the judgment now under review; and Justice GOULD, who has examined the case at general term—that the provisions of the will have not been clearly and distinctly established by two witnesses, or by one witness and a correct copy or draft as an equivalent for another. Only one witness speaks with knowledge of the provisions of the will, and the scrivener's memorandum is too imperfect to amount to a correct copy or draft. It has neither the usual or any introduction or close, indicating its testamentary character. The devise of the home farm is not contained in it; nor any specific description by which the 44 acres could be identified or located; a very imperfect and by itself unintelligible description of the devise to Ephraim of the Knickerbacker lot; an incomplete bequest of the household furniture and statement of the provision made for Aaron, and an entire omission of a clause alleged to be in the will, charging Ephraim with the payment of Mrs. Burnham's legacy, in case it was not paid by the testator. These defects are vital, and take away from the memorandum all pretense of being a correct copy or draft of the lost will.

Harris *v.* Harris.

The deceased must therefore be regarded as having died intestate, in the same manner as if he had attempted to make a will which failed for want of a formal execution.

The plaintiff was right in commencing the action for partition, and in my opinion the judgment of the court below should be reversed, and a decree might now be properly entered for the partition of the premises in controversy. The case is novel and the principles involved in it important; and although the defendants have failed in the controversy, I do not think they should be charged with the costs of the litigation, but that the costs of all the parties should be charged upon the fund or estate in controversy, in the manner usual in actions for the partition of lands.

It has been more usual with us on reversing the judgment of the court below to grant a new trial; and that course will be pursued in the present instance; although all the facts which can be made to bear upon the case have probably been already developed. If no further facts appear, the tribunal which disposes of the case on the new trial can make such disposition of the additional costs, and indeed of all the costs in the action, as shall under the circumstances be equitable.

The judgment of the court below must be reversed, and a new trial granted, with costs to abide the event, unless the parties are satisfied that the case cannot be changed, and waive so much of the order as contemplates a new hearing of the case.

PECKHAM, J. concurred.

GOULD, J. dissented. (See his opinion, *post,* p. 574.)

Judgment reversed.

[ALBANY GENERAL TERM, December 2, 1861. *Gould, Hogeboom* and *Peckham,* Justices.]