John Mullanphy resided at St. Louis, in the State of Missouri, and made and published there his last will, dated February 27, 1830, to which were added three codicils, the last being dated November 23, 1831. The said John Mullanphy died at St. Louis, August 29, 1833, seised of certain real estate, located in the city of New York. He left, him surviving, Elizabeth Mullanphy, his widow; and a son, Bryan Mullanphy; and six daughters, namely: Octavia, then the wife of Dennis Delaney; Eliza, wife of James *Page 60 
Clemens, Jr.; Jane, wife of Charles Chambers; Catharine, wife of Richard Graham; Ann Biddle, widow of Thomas Biddle; Mary, afterward the wife of General William S. Harney.
On the 7th day of August, 1840, a bill was filed in the Court of Chancery of the State of New York, for the partition or sale of certain lands, whereof the said John Mullanphy died seised, including the lands purchased by the appellant at the sale hereafter mentioned: and, in said bill, Elizabeth Mullanphy, Bryan Mullanphy, Dennis Delaney, and Octavia his wife, and James Clemens, Jr., and Eliza his wife, were the complainants; and Charles Chambers, and Jane his wife, Richard Graham, and Catharine his wife, Ann Biddle, William S. Harney, and Mary his wife, John O. Fallon, one of the executors named in the will of said John Mullanphy (Thomas Biddle, one of the other executors, having died before the said testator, and George Collier, the other and third executor, having renounced said executorship, and declined to act as such or as a trustee under said will), and Ellen Chambers, John Chambers, Owen Chambers, Margaret Chambers, Jane Chambers, Jr., Eliza Chambers, Ann Chambers, Mary Chambers, Thomas Chambers, and Bartholemew Chambers, all children of the said Jane Chambers, were the defendants.
The said bill was verified July 10, 1840, and contained the following, among other averments, in substance: That the complainant Elizabeth Mullanphy was the widow, and the complainants Octavia Delaney and Eliza Clemens were two of the daughters, and the complainant Bryan Mullanphy was the son, of John Mullanphy, late of St. Louis, Missouri, deceased.
That the said John Mullanphy died at St. Louis, August 29, 1853, seised of certain lands in the city of New York, whereof partition or sale was sought, by said bill of complaint.
That the said John Mullanphy left, him surviving, four other daughters, namely, the defendants Jane Chambers, Catharine Graham, Ann Biddle, and Mary Mullanphy, afterward Mary Harney; which said six daughters and sons were *Page 61 
at the time of the death of the said John Mullanphy, and still were, his sole heirs at law, and as such were severally seised of the said lands as tenants in common, each to one undivided seventh of said lands, but subject to the right of dower of the complainant Elizabeth Mullanphy. It also stated: "That upon the death of the said John Mullanphy certain paper writings were produced, which were alleged to be his last will and testament, and three several codicils thereto; which papers, so far as they purported to be the last will and testament of the said John Mullanphy, and the two first codicils thereto, shortly thereafter were lost, mislaid or destroyed; and have never since been produced or found, all of which bore date, and purported to have been executed since the first day of January, in the year of our Lord, one thousand eight hundred and thirty, and that thereupon an attempt was made before the County Court of the county of St. Louis, in the State of Missouri, to establish the said alleged will and the said alleged two first codicils thereto, by the drafts or a certain alleged copy thereof previously taken, which was followed by a long and contested controversy in that court, which finally decided to reject the said papers, and pronounced in favor of an intestacy; from which decision an appeal was taken, first to the Circuit, and afterward to the Supreme Court of the State of Missouri, by which latter tribunal the said decision of the said County Court was reversed, and the said papers admitted to probate, as and for, or as evidence of, the last will, testament, and two first codicils, of the said John Mullanphy deceased."
That said paper writings, so admitted to probate in the State of Missouri, were not, by virtue of the proofs there taken, and of the final decision there had, to be regarded as proved within and according to the laws of the State of New York, so as to disinherit the right heirs at law of the said John Mullanphy, or to bar their claims as such heirs to their shares in the said lands, and if the same be set up for that purpose, the same ought to be first duly proved and established according to the laws and usages of the State of New York. That the complainants were advised and *Page 62 
believe, that even should the said paper writings be admitted to probate in this State; the same contain divers bequests, devises directions and provisions contrary to the laws of New York, which or some of which, under the said alleged will and codicils, are void. That the complainants did not admit that the said paper writings were legal or competent evidence of the last will and testament and two first codicils of the said John Mullanphy deceased, or that they were rightfully and properly admitted to probate in Missouri.
That the defendant John O. Fallon alone qualified as the executor of the said alleged will, but that he expressly refused and still refuses to assume upon himself the trusts therein contained or any of them, and that George Collier, therein named as the other executor, expressly renounced and refused to qualify or act either as an executor or trustee under the said alleged will, and that the said alleged trusts were without any trustee, and that the title to the said trust estate, so far as it consisted of real estate, had devolved upon and vested in the heirs at law of the said John Mullanphy.
That the defendants Charles Chambers and Jane, his wife, had, at the time of the death of the said John Mullanphy, eight children living; that is to say, Ellen Chambers, John Chambers, Owen Chambers, Margaret Chambers, Jane Chambers, Jr., Eliza Chambers, Ann Chambers and Mary Chambers; and that, since the death of the said John Mullanphy, the said Charles Chambers and Jane, his wife, had two other children; that is to say, Thomas Chambers and Bartholomew Chambers, all of which ten children were living unmarried, and all of whom were infants, excepting Ellen Chambers, who was of full age.
The following proceedings were had in said chancery suit:
On the 25th day of August, 1840, an order was made and entered in said suit, that all the defendants therein severally appear and answer the said bill by the 26th day of December then next ensuing, or that the said bill be taken as confessed by them; and that, within twenty days from the date of the said order, the complainants cause a copy thereof to be published for three months at least, once in each week *Page 63 
successively, in the State paper, and in the New York Commercial Advertiser, a paper printed in the city and county of New York, in which such premises are situated, and which order contained a description of the premises affected by said suit.
The said order was published accordingly. On the 30th day of December, 1840, an order was made and entered in said suit, by which the said bill was taken as confessed by all the defendants.
On the 31st day of December, 1840, an order was made and entered in the said suit referring it to David Codwise, Esq., one of the masters in chancery, to take proof of the complainant's title and interest in the said premises, and of the several matters set forth in the said bill, and to ascertain and report the rights and interests of the several parties in the said premises.
By his report, dated the 17th day of April, 1841, the said master reported that the matters set forth in the said bill were found by him to be substantially true as set forth in the said bill, and that the said seven children of John Mullanphy, deceased, were each seised of one undivided seventh part of the said premises, subject to the dower right therein of the complainant Elizabeth Mullanphy.
On the 29th day of April, 1841, a decree was made and entered in the said suit by which it was ordered, adjudged, declared, determined and decreed, in substance, that the said report be, and the same was thereby, ratified, approved and confirmed. It was also decreed that the seven children of John Mullanphy, deceased, above named, were each seised and entitled to the one equal undivided seventh part of the said lands described in the said bill, with the appurtenances, subject to the dower and rights therein of the complainant Elizabeth Mullanphy. That the defendants, John O. Fallon, Ellen Chambers, John Chambers, Owen Chambers, Margaret Chambers, Jane Chambers, Jr., Eliza Chambers, Ann Chambers, Mary Chambers, Thomas Chambers, and Bartholomew Chambers, were not, nor were any or either of them, seised of or entitled to any share or interest in the said *Page 64 
lands or any part thereof, as tenants in common or otherwise. That the said lands described in the said bill should be sold at public auction, and that the proceeds thereof be divided among the several parties entitled thereto, according to the provisions of the said decree.
Afterward, and on the 11th day of June, 1847, a bill of revivor and supplement was filed in said suit, in which bill (which was verified on the 26th day of May, 1847), James Clemens, Jr., and Eliza his wife were the complainants, and Bryan Mullanphy, Octavia Delaney, Charles Chambers and Jane his wife, Richard Graham and Catharine his wife, William S. Harney and Mary his wife, Louis G. Picot, Ann B. Harney, Eliza Harney, and John Harney, infant children of Mary Harney, were the defendants.
The said bill of revivor contained the following, among other averments, in substance: That, since the said decree was obtained, the said Elizabeth Mullanphy and Dennis Delaney, two of the complainants named in the said original bill, and Ann Biddle, one of the defendants named therein, had died; and that in consequence thereof the said decree, and all the other proceedings had upon the said original bill, had become and were abated.
That the dower estate in the said lands of the said Elizabeth Mullanphy had terminated by her death. That, by the death of the said Dennis Delaney, the title to one-seventh of the said lands had become vested exclusively in his widow, the said Octavia Delaney. That the said Ann Biddle left a last will and testament, dated January 2, 1845, which will was on the 14th day of January, 1846, duly admitted to probate by and before the probate court of St. Louis, Missouri, and that the same corresponded and conformed to the statute laws of New York, as to the manner of its execution and publication; and that in and by the said will the said Ann Biddle devised all her right, title and interest in the said lands to the defendant Louis G. Picot, in trust, to have and to hold the same to the use of the defendant, Mary Harney, during her natural life, and after her death to the use of all and every the child or children of the said Mary Harney then *Page 65 
living, and of the issue of all and every of such child or children that might have died, and of the heirs and assigns of such child or children and issue forever.
That the said Mary Harney had at the time of the death of the said Ann Biddle, and at the time of the verification of the said bill of revivor, three children, that is to say, the defendants Ann B. Harney, Eliza Harney and John Harney, who constituted her only issue then living, each of whom was a minor. On the 26th day of May, 1848, an order was made and entered in said suit, appointing the clerk of the city and county of New York guardianad litem of infant defendants Ann B. Harney, Eliza Harney and John Harney.
Pending the proceedings on the said bill of revivor, the defendant Octavia Delaney intermarried with Henry Boyce; and on the 22d day of October, 1849, an order was made and entered in said suit, that the same stand and proceed against the said Boyce and wife, and that the plaintiffs amend their proceedings by adding the names of the said Henry Boyce and Octavia his wife.
On the 4th of May, 1850, an order was made and entered in the said suit, referring it to Aaron Vanderpoel, Esq., to take proof of the several matters set forth in the said bill of revivor; and by his report, dated January, 1851, the said referee reported that the said several matters were true as therein stated.
On the 1st day of April, 1851, a decree was made and entered in said suit, by which it was ordered, adjudged and decreed that the said report stand confirmed; that a portion of the said premises be sold, and that a portion thereof, including the lands affected by this proceeding, be partitioned among the heirs of the said John Mullanphy. By an order made and entered on the 16th day of August, 1851, Aaron Vanderpoel, Daniel P. Ingraham and John Cochrane, Esqrs., were appointed commissioners to make partition of said lands.
By the report of the said commissioners, dated the 22d day of November, 1851, it appears that the said commissioners made actual partition of the said premises among the several *Page 66 
heirs of the said John Mullanphy, as adjudicated by the said court to be entitled thereto, according to their respective estates, rights and interests therein, as claimed in said suit, and in the said proceedings upon said bill of revivor, and said commissioners partitioned to and set apart in severally, to the said plaintiffs, James Clemens, Jr., and Elizabeth, his wife (in the right of the said Eliza), a certain portion of the said premises, which portion included the premises affected by and in question in this present proceeding.
On the day of November, 1851, a judgment was made and entered in said action, by which it was ordered, adjudged and decreed, among other things, in substance:
That the said report of the said commissioners, in partition, and all things therein contained, should be ratified and confirmed; and the said partition so made by the said commissioners should be final and absolute as to all and singular the parties to said suit, and to those claiming or to claim from, through or under them, subsequent to the commencement thereof; and that each of the parties to said suit to whom shares or portions of said premises had been by said commissioners set apart in severally should have, hold and possess such shares or portions, free, clear, and discharged from all claim, right, estate or interest therein from any other or others of such parties.
The said Bryan Mullanphy, one of the complainants therein, died on the 15th day of June, 1851, after the entry of the interlocutory judgment or decree in said suit, settling and determining the interests of the seven children of the said John Mullanphy, deceased, of, in and to said premises, to be that each of them was entitled to an undivided seventh part therein, and, as we may infer from the papers used on this motion, unmarried and without issue. He left a last will and testament, and codicil thereto, executed by him in 1849 and 1850, he then residing at St. Louis, Missouri. The said instruments were duly proved and admitted to probate in St. Louis as and for the last will and testament, and codicil thereto, of said Bryan Mullanphy, deceased. The said will and codicil were duly executed and published in the *Page 67 
said State of Missouri, in accordance with the laws of that State and those of the State of New York. By said will the said Bryan Mullanphy did declare as follows: "One equal, undivided third of all my property, real and personal and mixed, I leave to the city of St. Louis, in the State of Missouri, in trust, to be and constitute a fund to furnish relief to all poor emigrants and travelers coming to St. Louis on their way bona fide to settle in the West." This is the only disposition of any property made by the will, and the codicil contains only a legacy of one thousand dollars.
This action was commenced on the 29th day of October, 1863, for a partition of the lands set off and partitioned to James Clemens, Jr., and Eliza his wife, in the suit commenced in the Court of Chancery on the 7th day of August, 1840, and which was partitioned and set off to the said James Clemens, Jr., and Eliza his wife, in the right of said Eliza. The said Eliza having in the mean while died intestate and leaving, her surviving, her said husband, James Clemens, Jr., and three sons, namely, James B. Clemens, Bryan M. Clemens and Jeremiah M. Clemens, and two daughters, namely, Helen J. Clemens and Alice B. Clemens, her sole heirs at law. This action was instituted by the said James B. Clemens as plaintiff, making all other persons interested in the real estate of said Eliza Clemens deceased parties defendant thereto. On the 6th of June, 1864, a judgment was duly entered in said action wherein and whereby it was ordered, adjudged and decreed, that the premises described in the complaint therein, should be sold by or under the direction of the referee therein named. And on the 4th day of April, 1865, the said premises were sold, and Isaac P. Martin, the appellant herein, became the purchaser of nine lots at such sale, for the aggregate sum of $27,150, he being the highest bidder therefor. The said purchaser signed the usual terms of sale, whereby he agreed to pay said sum for said lots and take and accept the referee's deed therefor
The said purchaser subsequently refused to complete said sale, alleging and claiming that said referee's deed would *Page 68 
not convey to him a good and perfect title to the said premises so purchased by him.
The Supreme Court at Special Term made an order compelling and directing said purchaser to complete his title, and, on appeal, the said order was affirmed by the General Term, and the purchaser now appeals to this court.
The question which lies at the foundation of the title to the premises which the appellant purchased at the sale pursuant to the judgment in this action is, did John Mullanphy die intestate as to the real estate possessed by him situated within this State? If he thus died intestate, so that such real estate descended to his heirs at law, it will not be difficult to demonstrate that the referee's deed will convey a good title to the premises purchased by the appellant.
It certainly cannot be of any moment how the fact of intestacy may be established. Whatever road we take to arrive at that result, the effect is the same, and the consequence produced is identical. The facts disclosed in the motion papers show that there are three modes or processes by and through which that result may be reached: first, by an adjudication of a competent court, having jurisdiction of the subject-matter and the parties adjusting and settling the same; second, by the circumstance that if a will has been made and executed according to the laws of this State, and the same has been lost or destroyed, that it cannot now be established as a lost or destroyed will; third, if it should appear that the will, a copy whereof is set out in the papers, was made and executed according to the laws of this State, and could be established as a lost or destroyed will, then, if its provisions are such as to make it void according to the laws of this State, it could not be interposed to change the descent as in case of intestacy.
Without expressing any opinion upon the second and third propositions above mentioned, it appears only necessary, to a proper disposition of this motion, to consider the first.
We have seen that a suit was instituted in the Court of Chancery in this State, on the 7th of August, 1840, in which all the children and heirs at law of the said John Mullanphy *Page 69 
were made parties, either as complainants or defendants. In addition thereto, the children of Mrs. Chambers, one of the daughters of John Mullanphy, were also made parties defendants, and also, in addition, John O. Fallon, the sole surviving executor named in the alleged will of the said John Mullanphy. The complaint therein alleged, in substance, that the said John Mullanphy, as to the real estate whereof he died seised, situated within the State of New York, had died intestate, and that the same, upon his death, descended to his said son Bryan and to his six daughters named, parties to said suit; that they were his sole heirs at law, and, as such, were severally seised of the said land as tenants in common, each to one undivided seventh of the said lands. Now all the parties interested in that question were before the court, or brought before it, during the progress of the action, and before final judgment.
1. There were present in court the son, and the six daughters of John Mullanphy, and the husbands of such of the daughters as were married.
2. The ten children of Mrs. Chambers were also made parties defendants. It is claimed on the part of the appellants, that nine of these children being infants, the court acquired no jurisdiction over them, as no guardian ad litem was appointed to appear for them to protect their interest. The second section of the act of April 21, 1831 (Laws of 1831, chap. 200), which was in force when the partition suit was commenced in August, 1840, authorized the Court of Chancery, on the publication of an order requiring non-resident defendants, whether minors or of full age, to appear and answer in a partition suit, to make a decree or order for taking the bill of complaint as confessed against all said non-resident defendants. It has been supposed that the act of April 25, 1833 (Laws of 1833, ch. 227), repealed the act of 1831, and this seems to have been the opinion of the chancellor in Minor v. Betts (1 Paige, 596). A careful reading of this act shows that its object was to authorize the chancellor to appoint an officer of the court guardian ad litem for minors in a partition suit, for whom no suitable or disinterested *Page 70 
person shall voluntarily signify his consent in writing to act as such guardian. It does not in terms repeal the act of 1831. And as it does not conflict with the provisions of the latter act, both may be assumed to stand, and both are published by the learned author of the statutes at large, as existing statutes at this day. (See Edmond's Statutes at Large, vol. 4, pp. 612, 613.) But the youngest of these children must have attained full age more than six years since, and this long acquiescence by them in this decree, would now preclude any attempt on their part to set it aside for any irregularity of the kind now pointed out. It will be assumed that if the children of Mrs. Chambers were needful parties to the original partition suit, they were properly made such, and the judgment or decree therein effectually disposed of all their interest, if any, in the subject-matter of that suit.
3. If there was any valid will of John Mullanphy in existence, and any legal and valid trusts were created by it, then John O. Fallon (if a trustee under the will) was a proper and necessary party to that suit, as representing those interests. By the alleged will of John Mullanphy, he appointed John O. Fallon, Thomas Biddle and George Collier, the executors of his will. Although he assumed to create trusts by the terms of his will, and evidently intended to name trustees, yet it appears that in fact he did not name any, but left the space for their names blank. There were therefore no trustees in this will. But if it is assumed that the testator intended that his executors named should be the trustees under the will, and act as such, then, as Biddle had died before the testator, and Collier had distinctly and unequivocally renounced in writing, and declined to act as executor or trustee, and it also appearing that letters testamentary had been issued by the court in St. Louis to Fallon alone, and that he alone had taken upon himself the burden of administration of the estate of said John Mullanphy, under said alleged will, the principles settled by this court in Mead v.Mitchell (17 N.Y. 210) are pertinent to the question as to the effect of Fallon being a party in the chancery suit. It was there held that under our statutes an actual *Page 71 
partition or sale, under a judgment in partition, is effectual to bar the future contingent interests of persons not in esse,
though no notice is published to bring in unknown parties, and though such future owners may take as purchasers under a deed or will, and not as claimants under any of the parties to the action. And also that, independent of the statute, contingent remainder-men, or persons taking under an executory devise, who may thereafter come into being, are bound by the judgment as being virtually represented by the parties to the action in whom the present estate is vested.
4. Upon the death of Ann Biddle, one of the daughters and heirs at law of John Mullanphy, her interest in the premises sought to be partitioned in the chancery suit passed by her will to the trustee named therein, Louis G. Picot, in trust for Mrs. Harney for life; and after her death to the use of all and every of her child or children. It was proper to do as was done, therefore, to bring in, by a bill of revivor, as parties defendants, Picot the trustee, under the will of Mrs. Biddle, and the children of Mrs. Harney, for whom, they being minors, a guardian ad litem was appointed. These minors were regularly and properly before the court.
5. Mrs. Delaney having married Henry Boyce, he was, therefore, properly made a party defendant.
Thereupon, on the 29th day of April, 1841, a decree was made adjudging and determining, in substance and effect, that the said John Mullanphy had died intestate as to the said real estate, whereof partition was sought in said suit, and that the seven children named of the said John Mullanphy were each seised and entitled to the one equal undivided seventh part of the said lands described in the said bill. And on the 1st day of April, 1851, a decree was also made and entered in said suit upon said bill of revivor and supplement, by which it was also ordered and adjudged that the matters stated in said bill of revivor were true. And on the day of November, 1851, a final judgment was entered in said action, whereby it was adjudged and decreed that the report of the commissioners in partition and all things therein *Page 72 
contained, be ratified and confirmed; and that the said partition so made by the said commissioners be final and absolute, as to all and singular the parties to that suit, and as to those claiming from, through or under them, subsequent to the commencement thereof; and that each of the said parties to whom shares or portions of said premises had been by said commissioners set apart in severalty, have, hold, and possess such shares or portions, free, clear, and discharged from all claim, right, estate or interest therein, from any other or others of said parties.
It is difficult to perceive any substantial reason, why this adjudication of the rights of all parties under this will, if it be assumed to be the last will and testament of John Mullanphy, should not be final and conclusive. It is confidently believed that none is suggested; and a careful examination of the facts presented, and the principles of law applicable thereto, leave a firm conviction upon the mind, that none exist. All persons interested in being were parties to the suit, and the proper person to represent those not in esse was also a party. InBlakely v. Calder (15 N.Y. 617), the court held, that a judgment in partition is binding upon the parties, if the court had jurisdiction of them and of the subject-matter of the action; and also that the Supreme Court is one of general jurisdiction in law and equity, and has jurisdiction of all actions for partition; that it was its province to decide whether it was a proper one in which to award a partition or a sale, and if its decision was erroneous the remedy was by an appeal. As no one but the parties to the action could call in question the purchaser's title, and as they were bound by the judgment, it was held in the case that there was no reason why the sale in that case should not be consummated, by compelling the purchaser to take the title. So in the case at bar, all persons interested in the real estate of John Mullanphy, were parties to the action in the Court of Chancery, and are bound by the judgment therein. It is thoroughly well settled, that matters which have been once determined by judicial authority, cannot be again drawn into controversy as between the parties and their *Page 73 
privies to the decision. (2 Smith's Leading Cases, p. 787, and authorities there cited.)
A decree, with regard to the personal status of an individual, will be equally conclusive with a decision upon a right of property; and hence the appointment or removal of a guardian or administrator, or the adjudication on a question of descent or pedigree, will be binding, not only in the proceedings in which they take place, but in every other in which the same matter is agitated. And it is equally well settled that the mode in which the question is brought before the court is immaterial, if it be actually decided. (2 Smith's Leading Cases, p. 787, and authorities cited.)
But it is urged, on the part of the appellants, upon this argument, that it does not distinctly appear, by the judgment in the chancery suit, that the court adjudged that John Mullanphy died intestate, or that the will alleged was void.
It was not essential to create an estoppel that these matters should have been adjudicated in precise terms. It is sufficient that the substance was so decided, and, as already observed, it was thus disposed of by the judgment, in declaring that the real estate, whereof the said John Mullanphy died seised, descended to his seven children, and that each was seised and entitled to the one equal undivided seventh part of the said lands. It is laid down, as well settled, that the estoppel extends beyond what appears on the face of the judgment to every allegation which, having been made on one side and denied on the other, was at issue and determined in the course of the proceedings. (2 Smith's Leading Cases, p. 787; Outram v. Morewood, 3 East, 346, 355;Stewart v. Hughes, 7 Casey, 381.)
The burden of proof is of course on those who rely upon the estoppel, and they must show that the matter now in controversy has been already heard and determined. When, however, it is made to appear with sufficient clearness that a transaction has undergone a judicial investigation, the presumption will be irresistible that the judgment covered the whole, so far as it was entire and indivisible, and cannot be *Page 74 
overcome except by the clearest proof that no evidence was given as to that fact by the plaintiff, or that the defendant failed to take advantage of a defense that might have been made available. (Bellows v. Forsyth, 24 How. 183; Harris v. Harris, 36 Barb. 88; Simes v. Lane, 12 Harris, 242; Kilheffer v.Herr, 17 S. R. 319, 321.)
The well established rule is clearly and well stated by Judge HOGEBOOM in Harris v. Harris (ubi supra). He says: "The general rule on this subject is well known to be that a former judgment of the same court, or of a court of competent jurisdiction, directly upon the point in issue, is, as a plea in bar or as evidence, conclusive between the same parties, or others claiming under them, upon the same matter directly in question, in a subsequent action or proceeding." And he adds: "Such judgment or adjudication is final and conclusive, not only as to the matter actually determined, but as to every other matter which the parties might have been litigating and have had decided as incident to, or essentially connected with, the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action both in respect to matters of claim and of defense." (Citing Bruen v. Howe, 2 Barb. 586; Embury v. Conner, 3 Comst. 511; Hare v. Baker,
1 Seld. 357; Davis v. Talbot, 2 Kern. 184; Hayes v.Reese, 34 Barb. 156.)
This court said in Embury v. Conner (supra), that an allegation on record, upon which issue has been once taken and found, and a judgment has been rendered, is, between the parties taking it, and their privies, conclusive, according to the finding thereof, so as to estop the parties respectively from again litigating that fact once so tried and found, whether plead in bar or given in evidence.
All the heirs of John Mullanphy are therefore forever estopped by the judgment in the chancery suit, from setting up or claiming that the said John Mullanphy did not die intestate, and that upon his death the real estate whereof he died seised, situate within the State of New York, did not descend to his seven children as his heirs-at-law, in equal portions or shares. Such being the settled law, Mrs. Clemens *Page 75 
and those claiming under her are estopped from setting up any other or greater estate or interests in the said real estate of the said John Mullanphy, than that partitioned and set off to her by the proceedings and judgment in the said chancery suit, and each of the other heirs are in like manner and to the same extent estopped from setting up or asserting any such claim. It follows that Mrs. Clemens, by the judgment of a court of competent jurisdiction, in a suit in which all persons interested in the subject-matter of the litigation being parties to the suit, was declared entitled to hold in severalty in fee, the portion of the said real estate so partitioned and set off to her, and each of the other heirs of John Mullanphy, to hold in the same way the portions partitioned and set off to them respectively, and their rights as thus declared, are res adjudicata. Mrs. Clemens had therefore a good title to her portion, free and clear of all and every claim of each and all the other heirs of the said John Mullanphy. The regularity and validity of the judgment in the chancery suit are assumed, and that such suit did not abate by the death of Bryan Mullanphy one of the complainants therein before the final judgment.
By an amendment of the Code passed July 10, 1851, its provisions were made applicable to suits then pending as to all subsequent proceedings therein. And by section 121 as then passed, it was provided that no action shall abate by the death of a party if the cause of action survive or continue. It is clearly to be inferred, from the papers used on this motion, that Bryan Mullanphy died unmarried and without leaving issue as already observed; and, if so, then his five surviving sisters, the daughters of John Mullanphy, would have been his heirs at law, provided he left no valid will. This clearly appears by the report of the case of Boyce v. The City of St. Louis (29 Barb. 650).
That action was commenced by Octavia Boyce, a sister of Bryan Mullanphy, for a partition of the lands partitioned and set off to him in the chancery suit, and of which he died seised, leaving, him surviving, his five sisters, of whom the plaintiff was one. The parties to that action, other than *Page 76 
the city of St. Louis, were the four surviving sisters of the said Bryan Mullanphy deceased, and their husbands, and the surviving children of a deceased sister of said Bryan Mullanphy. The city of St. Louis was made a party defendant, as claiming one equal undivided third part of the real property sought to be partitioned under the said alleged last will and testament of the said Bryan Mullanphy. The city of St. Louis, in her answer, set up such last will and testament, and a devise and bequest to it of one-third part of the testator's property real and personal. The substance of this will has already been stated.
The Supreme Court held the will to be void upon two grounds: First, that a foreign corporation, not authorized by its charter to take and hold real estate, cannot take by devise land lying within this State. Second, that the city of St. Louis had not capacity to take real estate for the charitable purpose and intent specified in this will.
It might also have been added that the devise was void, as being in contravention of the provisions of the Revised Statutes, which had abolished all uses and trusts in real estate within this State, except as authorized and modified thereby. (1 Rev. Stat. 727, § 45.) The trust created by this will is not one of those authorized by these statutes. And it is now the settled law of this State that charitable uses and trusts are not excepted from the operations of the provisions of this section. (Ayres
v. The Methodist Episcopal Church, 3 Sand. 371; Yates v.Yates, 9 Barb. 324; Beekman v. The People, 27 id. 272 to 279; McCaughel v. Ryan, id. 376; Beekman v. Benson,23 N.Y. 298; Marshall v. Downing, id. 366; Same v. Same, 23 How. Pr. 4; Levy v. Levy, 33 N.Y. 97; Bascom v.Albertson, 34 id. 584.) We must therefore hold that Bryan Mullanphy died intestate, as to his real estate situated within the State of New York; and, consequently, upon his death, the chancery suit did not abate, as all his interest in the subject-matter of the litigation therein went to and became vested in his five sisters, then parties to that suit. The cause of action, therefore, survived and continued in the other parties to that action. *Page 77 
It is also very apparent, if this adjudication made in the chancery suit was not interposed, from the facts appearing in these motion papers, that the alleged will of John Mullanphy could never be established in this State as a lost or destroyed will. (Harris v. Harris, 36 Barb. 88-95; Schultz v.Schultz, 35 N.Y. 653.)
It is unnecessary to proceed with the discussion of the question whether, if the said alleged will of John Mullanphy were proved and established as his last will and testament, the said will contains a valid disposition of his real estate within this State, or is wholly void. As already observed, this question has in effect been decided in the chancery suit when all proper parties were before the court, and it would be as unseemly as it would be unjust to them, in their absence, and without a hearing on their part, to open that discussion, and proceed again to adjudicate that question. It must be regarded now as finally and conclusively settled, that Mrs. Clemens and her husband took their one-seventh part of said estate free and discharged of all trusts assumed to be created by said will, and free and clear of all claim or interest therein of any of the other heirs, devisees or legatees of the said John Mullanphy.
There is no allegation that the proceedings in the present action for the partition and sale of the said real estate of Mrs. Clemens have not, in all respects, been regular, nor that all proper persons have not been made parties thereto.
We are of the opinion that the appellant acquired a good title to the nine lots of land purchased by him at the sale, pursuant to the judgment in the last mentioned action, and the order of the Supreme Court, compelling him to complete his purchase, should be affirmed with ten dollars costs.
Affirmed. *Page 78