EDWARD S. STOKES, Respondent, *v.* WILLIAM E. D. STOKES, Appellant.

*Partial failure of the consideration of a contract.*

A contract, a portion of the consideration of which was that one of the parties thereto should purchase from a third person certain shares of stock, construed and enforced, notwithstanding the failure of such party to purchase such stock by reason of the refusal of the holder thereof to sell him the same.

APPEAL by the defendant, William E. D. Stokes, from portions of a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 5th day of September, 1893, rendered upon the

decision of the court, after a trial at the New York Special Term, dismissing the plaintiff's complaint.

*Artemus H. Holmes,* for the appellant.

*Esek Cowen,* for the respondent.

PER CURIAM :

On the 18th of August, 1891, the litigants entered into the following contract :

" THIS AGREEMENT, made the 18th day of August, 1891, between Edward S. Stokes and W. E. D. Stokes, witnesseth :

" *Whereas,* the said W. E. D. Stokes, has heretofore, with the consent of said Edward S. Stokes, purchased from Cassius H. Read, 1,250 shares of his preferred stock and 500 shares of his common stock of the Hoffman House, a corporation, and with the knowledge and consent of said Edward S. Stokes is about to purchase from said Read the remainder of his stock, to wit, 1,963 shares of common stock, or a portion thereof, with the intent that they may together be the owners of the whole of the stock of said corporation.

" *Whereas,* the whole of the issue of five hundred thousand of bonds of said ' Hoffman House,' secured by a mortgage to the Farmers' Loan and Trust Company — except twenty-five thousand dollars given up and canceled — are now held and owned by said Edward S. Stokes, except a portion held and controlled by him as a pledge from said Read for money due by him to said Edward S. Stokes.

" *Whereas,* the said Edward S. Stokes hereby declares that the indebtedness of the old firm of C. H. Read & Co. has been paid and extinguished, except the contested claim now in suit against them by John W. Mackay, except the claim against them by Edward S. Stokes, and except about fifteen thousand dollars for taxes which said C. H. Read & Co. are bound to pay, and further declares that there is no indebtedness of the ' Hoffman House,' except as shown in their balance sheet of 31st of July, 1891, for $66,353.49 for current expenses.

" Now, therefore, in consideration of the premises, and of the covenants herein by each made to the other, and for a good and valuable consideration by each paid to the other, the said parties hereby covenant and agree as follows :

"*First.* Neither of said parties will sell any of his stock of the Hoffman House without first consulting with and offering to sell the same to the other, and if a sale is made by one, the other party shall have the option to make it a sale for joint account.

"*Secondly.* Said Edward S. Stokes shall have for his services as an officer of said corporation a salary not to exceed four hundred dollars a month. No new enterprise or business shall be undertaken, or any liability incurred by said corporation outside the regular business of managing the present hotel, restaurant and cafés, except with the express consent in writing of said W. E. D. Stokes.

"*Thirdly.* The said W. E. D. Stokes shall have two of the directorships of said corporation for himself or his nominees.

"*Fourthly.* For the consideration aforesaid the said Edward S. Stokes guarantees the said W. E. D. Stokes that there are no other claims and debts against the 'Hoffman House,' except those shown on said balance sheet of 31st of July, 1891, and the current expenses, and guarantees and indemnifies him against all claims against the 'Hoffman House' by said C. H. Read & Co., or John W. Mackay, or said Edward S. Stokes, or any other persons as the creditors of said C. H. Read & Co.

"*Fifthly.* The said Edward S. Stokes further covenants and agrees not to sell or dispose of any of the bonds of 'the Hoffman House,' owned or held by him as aforesaid, without the express consent of said W. E. D. Stokes, and also that the $25,000 of the $50,000 of bonds received from said Read, not yet canceled, shall be canceled pursuant to the terms of the mortgage on 1st of July, 1892, and meantime held solely for that purpose, and no interest shall be paid thereon.

"*Sixthly.* And as security for these guarantees for a loan of about $32,000 and for any obligation of said Edward S. Stokes to W. E. D. Stokes, connected with said Read, and against any foreclosure of the said mortgage, said Edward S. Stokes has deposited with said W. E. D. Stokes bonds of said 'Hoffman House' to the par value of $150,000.

"*Seventhly.* The said W. E. D. Stokes agrees to sell and transfer to said Edward S. Stokes one-half of the whole, or of such portions of said 1,963 shares of common stock as he may purchase from said Read, at the price he pays for said shares, with interest at six per

cent on his note at twelve months, with one renewal, if he desires, for twelve months longer, with the stock so held as collateral. Upon payment of said price, at the time above specified, the shares sold be delivered to said Edward S. Stokes, and he shall in the meantime receive the dividends thereon.

"*Eighthly.* For any violation of this agreement, each party shall have a claim and charge against the other on the books and accounts of the 'Hoffman House.'

"In witness whereof, we have hereto set our hands and seals on the day above written.

"E. S. STOKES.
"W. E. D. STOKES."

It was conceded by the pleadings and on the trial that only $125,000 of the bonds mentioned in the sixth paragraph of the contract had been delivered to the defendant, and the only issue litigated was whether the defendant was entitled to a judgment directing the plaintiff to deliver to the defendant the remainder of the bonds. Among other findings, the court found:

"IX. The only consideration for the guarantees made by the plaintiff in the contract, and for the additional security from him therein provided for, that was proved upon the trial was the statement on the face of said contract that the defendant was about to purchase from said Cassius H. Read 1,963 shares of the Hoffman House common stock, or a portion thereof, with the intent that the plaintiff and defendant might together be the owners of the whole of the stock of the said corporation, and the further agreement that the plaintiff should have the privilege of buying from the defendant one-half of the stock that the defendant should purchase from said Read at the price paid for the same."

Upon this finding, the court based the following conclusions:

"I. The true construction of the contract of August 18, 1891, is that the understanding of the parties was that the defendant should purchase of Read the whole of his 1,963 shares of stock, or such portion thereof as should be sufficient to make the parties to said contract the sole owners of the whole of the stock of the Hoffman House. In other words, the defendant was to buy the whole of said stock, or such portion thereof as the plaintiff should not buy.

" II. The defendant not having purchased the said stock of Read within a reasonable time from such contract, and the proof being that he has been unable to purchase, by reason of the refusal of Read to sell, the contract cannot be enforced against the plaintiff."

The court found that the contract had not been abrogated nor modified by the parties, but that it remained in full force ; and that there being nothing in the evidence which aids in its construction, the intent of the parties must be derived from the terms of the written agreement.

We are unable to agree with the learned trial court that the only consideration for the guarantees made by the plaintiff and for the security provided for in the contract, was the statement that defendant was about to purchase 1,963 shares of the Hoffman House stock, together with the privilege of the plaintiff's taking one-half of the shares so purchased at their cost.

It is expressly provided in the sixth clause that one of the considerations for the pledge of $150,000 in bonds was the loan of about $32,000 from the defendant to the plaintiff, which was outstanding at the time of the trial. The defendant nowhere binds himself to purchase any number of shares from Read, but it was evidently believed by both parties when the contract was made that he would have no difficulty in making purchases at satisfactory rates to the parties to the contract. There is no provision in the contract dependent on the purchase of these shares except the seventh clause, which provides that one-half of all purchases shall be sold by defendant to the plaintiff at their cost. These litigants knew when the contract was entered into that Read could not be compelled to sell his shares, and so they wisely forebore from inserting in the contract a provision that a certain number of shares should be purchased which both parties knew might be impossible of performance.

It seems to us that the provisions contained in the contract in respect to the purchase of shares from Read and their sale to the plaintiff, are independent ones, and that the obligation of the plaintiff to provide the securities mentioned in the sixth clause is not affected by the failure of the defendant to do that which was impossible.

. There is no evidence in the case which tends to show that the defendant did not in good faith attempt to purchase the shares of Read. Indeed, the court finds that the defendant has repeatedly attempted to purchase Read's shares, but has been unsuccessful. There is no evidence that defendant has failed to perform any of his stipulations, and, under such a state of the evidence, we are of the opinion that the defendant made a case which entitled him to a judgment directing the plaintiff to deposit with the defendant, as collateral security for the plaintiff's obligations mentioned in the contract, the $25,000 in Hoffman House stock (which it is conceded has not been deposited), as required by the terms of the contract.

That part of the judgment appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Present — VAN BRUNT, P. J., FOLLETT and PARKER, JJ.

Judgment reversed and new trial granted, with costs to abide the event.