WILLIAM E. D. STOKES, Plaintiff, *v.* EDWARD S. STOKES, Defendant.

*Res adjudicata.*

William E. D. Stokes brought in the Superior Court of the city of New York an action upon three promissory notes, and thereafter an action upon a fourth note each made by the defendant, Edward S. Stokes, to the order of William E. D. Stokes. The actions were afterwards consolidated and the defendant served an answer in the consolidated action, alleging that he had deposited certain bonds with William E. D. Stokes as security for the payment of the notes, and had tendered to him the amount thereof with interest and costs, but that William E. D. Stokes refused to surrender the bonds, thereby converting the same to his own use. He demanded judgment for their value. William E. D. Stokes served a reply to this counterclaim, in which he alleged that he held some of the bonds as security for the performance of another agreement of August 18, 1891, entered into between himself and Edward S. Stokes; that by such agreement Edward S. Stokes agreed to deposit certain additional bonds with William E. D. Stokes, but had neglected to do so.

After the commencement of the Superior Court actions Edward S. Stokes brought an action in the Supreme Court against William E. D. Stokes, in which he alleged that the bonds had been deposited with William E. D. Stokes as collateral security for the payment of the notes in suit; that the parties had mutually agreed to abandon the agreement of August eighteenth made by them, but that William E. D. Stokes claimed that the contract was still enforcible by him. The complaint demanded judgment that William E. D. Stokes be enjoined from prosecuting the actions in the Superior Court, and that he be adjudged to hold the bonds as security only for the payment of the notes, and that he be required to surrender the bonds to the plaintiff on payment of the notes with interest.

William E. D. Stokes interposed an answer in the Supreme Court action averring, among other things, that the agreement had not been abandoned or modified in any respect, and alleging, as a counterclaim, that Edward S. Stokes had not deposited all the bonds which he had agreed to deposit by the terms of the agreement between the parties, and it demanded judgment that Edward S. Stokes be required to deliver such bonds to him or the par value thereof. To this counterclaim Edward S. Stokes served a reply in which he reiterated his allegation that the agreement had been abandoned, and alleged that the construction sought to be placed upon that agreement by William E. D. Stokes was inequitable, and that the terms and conditions of the agreement were so indefinite, uncertain and oppressive that it would be inequitable to enforce it.

The Supreme Court action was tried before the one in the Superior Court, and resulted in a judgment adjudging that the complaint be dismissed, without costs, and that the cause of action set forth in the defendant's counterclaim be dismissed on the merits, without costs. It recited that as the consideration of the agreement of August eighteenth had failed, it could not be enforced against the plaintiff.

Subsequently the Superior Court action was tried, and the court dismissed the defendant's counterclaim and directed a verdict in favor of the plaintiff for the amount due on the four notes.

On a motion for a new trial in the Superior Court action, made at the Appellate Division in the first instance, it was

*Held,* that the judgment entered in the Supreme Court action was conclusive against the right of William E. D. Stokes to make any further claim under the agreement of August eighteenth;

That a finding in the Supreme Court action that the agreement had not been abandoned, did not establish that it was not adjudged therein that the agreement of August eighteenth could not be enforced;

That, assuming that the judgment in the Supreme Court action was not conclusive against the right of William E. D. Stokes to hold the bonds as security for the performance of the agreement of August eighteenth, it was error for the court to refuse to submit to the jury the questions of fact raised by the evidence, as to whether the contract had been abrogated, or whether William E. D. Stokes had committed a breach thereof.

RUMSEY and MCLAUGHLIN, JJ., dissented.

MOTION by the defendant, Edward S. Stokes, for a new trial made upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance, upon the dismissal of the defendant's counterclaim and the verdict of a jury in favor of the plaintiff, rendered by direction of the court.

*Charles E. Hughes,* for the motion.

*Albert B. Boardman,* opposed.

VAN BRUNT, P. J.:

On the 18th of October, 1892, the plaintiff brought an action in the Superior Court of the city of New York to recover upon three promissory notes made by the defendant to the order of the plaintiff. On the 21st of October, 1892, an amended complaint was served. Upon the same day another action was brought in the same court by the plaintiff, against the defendant, to recover the amount due upon a fourth promissory note. On the 16th of November, 1892, upon the consent of the attorneys for the respective parties, the said two actions were consolidated into one action. On the 22d of November, 1892, the defendant served his answer in the consolidated action, admitting the making of the notes set forth in the complaint, and that they were due and unpaid, and then alleging by way of defense and counterclaim, in substance, that at the time of the execution of the first three notes, he deposited with the plaintiff as security therefor 100 of the first mortgage bonds of the Hoffman House Corporation of the actual and par value of $100,000, and 30 bonds of the United Lines Telegraph Company, of the actual and par value of $30,000; that thereafter and as further security for said notes, he deposited with the plaintiff 25 additional bonds of the Hoffman House Corporation of the actual and par value of $25,000, and that all said bonds were held by the plaintiff as collateral security for said three notes and for no other purpose; that thereafter and upon the execution of the fourth note, it was agreed that the plaintiff should hold said 155 bonds as security for that note also; that on the 15th day of November, 1892, the defendant duly tendered to the plaintiff $37,500, the amount of said four notes, with interest and costs, upon condition that said plaintiff should surrender to him said 155 bonds; that the plaintiff refused to receive the money or deliver the bonds, and thereby converted said bonds to his own use; and alleging that the bonds were worth the sum of $155,000, and claiming judgment for that sum.

The plaintiff replied to the defendant's counterclaim on the 12th of December, 1892, and denied that the 125 Hoffman House bonds had been deposited with him solely as collateral security for the payment of the four notes in question, but admitted that the 30 United Lines Telegraph bonds had been so deposited and alleging that he had offered to redeliver said United Lines Telegraph bonds

to the defendant upon payment of the four notes in suit. The plaintiff further alleged that as to the 125 Hoffman House bonds, after the same had come into his possession, and on or about the 24th of August, 1891, a certain contract or agreement in writing under seal, bearing date August 18, 1891, was executed between the plaintiff and the defendant, and that in part performance of said contract of August eighteenth, and for the purposes therein recited and set forth, the said 125 Hoffman House bonds, and no more, and none other thereof, were deposited with and still held by the plaintiff. The answer further alleged that the defendant, although frequently requested so to do, had neglected and refused and still neglects and refuses to make the deposit with plaintiff of 25 additional bonds of the Hoffman House Association as required by said contract of August 18, 1891, the deposit of which the plaintiff was entitled to have made with him by the defendant. The plaintiff, further replying, denied the value of the bonds.

This action first came on for trial before the court and a jury on the 20th of November, 1893. Certain evidence was thereupon offered, and a verdict was directed by the court in the plaintiff's favor for the amount due on the four notes with interest. Upon appeal the judgment was affirmed by the Court of Appeals. Subsequently a motion was made for a new trial on the ground of newly-discovered evidence. This motion was granted and a new trial had, which also resulted in a direction by the court of a verdict in favor of the plaintiff, judgment being suspended and the exception ordered to be heard in the first instance at the Appellate Division; and the questions now presented to the court arise upon a motion for a new trial upon the exceptions contained in that record. The issues which were tried were those presented by the counter-claim, and were whether the said collaterals were pledged only for the payment of the notes in suit and for no other purpose, or, if some other obligation was covered by the pledge, that such other obligation was discharged and not in force at the time of the tender. The court held as matter of law that the agreement of August 18, 1891, was in force and consequently that the said tender was not sufficient.

The said agreement of August 18, 1891, is as follows :

"THIS AGREEMENT made the 18th day of August, 1891, between Edward S. Stokes and W. E. D. Stokes, *witnesseth,*

" WHEREAS, the said W. E. D. Stokes has heretofore, with the consent of said Edward S. Stokes, purchased from Cassius H. Read 1,250 shares of his preferred stock and 500 shares of his common stock of the ' Hoffman House,' a corporation, and with the knowledge and consent of the said Edward S. Stokes is about to purchase from said Read the remainder of his stock, to wit, 1,963 shares of common stock, or a portion thereof, with the intent that they may together be the owners of the whole of the stock of said corporation ;

" WHEREAS, the whole of the issue of five hundred thousand dollars of bonds of said ' Hoffman House,' secured by a mortgage to the Farmers' Loan and Trust Company — except twenty-five thousand dollars given up and cancelled — are now owned and held by said Edward S. Stokes, except a portion held and controlled by him as a pledge from said Read, for money due by him to said Edward S. Stokes.

" WHEREAS, the said Edward S. Stokes hereby declares that the indebtedness of the old firm of C. H. Read & Co. has been paid and extinguished, except the contested claim now in suit against them by John W. Mackay, except the claim against them by Edward S. Stokes, and except about fifteen thousand dollars for taxes which said C. H. Read & Co. are bound to pay ; and further declares that there is no indebtedness of the ' Hoffman House,' except as shown in their balance sheet of 31st July, 1891, for $66,353.49-100, and for current expenses.

" *Now, therefore,* in consideration of the premises, and of the covenants herein by each made to the other, and for a good and valuable consideration by each paid to the other, the said parties hereby covenant and agree as follows :

" *First.* Neither of said parties will sell any of his stock of the ' Hoffman House ' without first consulting with, and offering to sell the same to the other, and if a sale is made by one, the other party shall have the option to make it a sale for joint account.

" *Secondly.* Said Edward S. Stokes shall have for his services, as an officer of said corporation, a salary not to exceed four hundred dollars a month. No new enterprises or business shall be

undertaken or any liability incurred by said corporation outside the regular business of managing the present hotel, restaurants and cafés, except with the express consent in writing of said W. E. D. Stokes.

"*Thirdly.* The said W. E. D. Stokes shall have two of the directorships of said corporation for himself or his nominees.

"*Fourthly.* For the consideration aforesaid, the said Edward S. Stokes guarantees the said W. E. D. Stokes that there are no other claims and debts against the 'Hoffman House,' except those shown on said balance sheet of 31 July, 1891, and the current expenses, and guarantees and indemnifies him against all claims against the 'Hoffman House,' by said C. H. Read & Co., or John W. Mackay, or said Edward S. Stokes, or any other persons as the creditors of said C. H. Read & Co.

"*Fifthly.* The said Edward S. Stokes further covenants and agrees not to sell or dispose of any of the bonds of the 'Hoffman House,' owned or held by him as aforesaid, without the express consent of said W. E. D. Stokes, and also that the $25,000 of the $50,000 of bonds received from said Read, not yet cancelled, shall be cancelled pursuant to the terms of the mortgage, on 1st July, 1892, and meantime held solely for that purpose, and no interest shall be paid thereon.

"*Sixthly.* And as security for these guarantees, for a loan of about $32,000, and for any obligations of said Edward S. Stokes to said W. E. D. Stokes connected with said Read and against any foreclosure of the said mortgage, said Edward S. Stokes has deposited with said W. E. D. Stokes bonds of said 'Hoffman House' to the par value of $150,000.

"*Seventhly.* The said W. E. D. Stokes agrees to sell and transfer to said Edward S. Stokes one-half of the whole, or of such portion of said 1,963 shares of common stock as he may purchase from said Read, at the price he pays for said shares, with interest at six per cent on his note at twelve months, with one renewal, if he desires, for twelve months longer, with the stock so sold as collateral. Upon payment of said price at the time above specified the shares sold shall be delivered to said Edward S. Stokes, and he shall, in the meantime, receive the dividends thereon.

"*Eighthly.* For any violation of this agreement each party shall

have a claim and charge against the other on the books and accounts of the 'Hoffman House.'

"*In witness whereof,* we have hereto set our hands and seals on the day above written.

"E. S. STOKES [SEAL].

"In presence of "W. E. D. STOKES [SEAL].

"WM. R. MARTIN."

It will not be necessary, in discussing these exceptions, to consider at length the oral evidence which was adduced upon the trial. It would seem that the main question arises upon the effect of the legal proceedings which had culminated in the judgment between these same parties, and involving the agreement of August 18, 1891, and the transactions which were the subject-matter of the present litigation. If, however, this question is resolved in favor of the plaintiff herein, there would in any event seem to be questions which should have been submitted to the jury.

Upon the trial there was introduced in evidence a judgment roll in an action commenced in the Supreme Court in or about the month of November, 1892, brought by the defendant in this action against the plaintiff in this action. In his complaint in that action Edward S. Stokes alleged that, on and prior to the 9th of July, 1891, he was indebted to W. E. D. Stokes in the sum of $36,300, which were represented by four notes, being the notes upon which the present action was brought; that on or about the 10th of July, 1891, there was paid on account of the indebtedness represented by said notes the sum of $2,000, leaving a balance of $34,300 still due and owing. He further alleged that as collateral security for the payment of the indebtedness he had delivered the 125 Hoffman House bonds, heretofore mentioned, and the 30 bonds of the United Lines Telegraph Company, and that the actual value of these securities was $150,000. He then alleged the organization of the Hoffman House Corporation, with a share capital of $750,000, divided into 2,500 shares of preferred stock and 5,000 shares of common stock, for the purpose of acquiring the hotel property and business which had theretofore been conducted by Edward S. Stokes and one Cassius H. Read as partners under the firm name of C. H. Read; that the corporation duly acquired from said firm the said hotel property and business and issued in part payment thereof the said

$750,000 of preferred and common stock in or about the month of August, 1890, which stock was thereupon divided between Edward S. Stokes and Read; that after said Read had come into possession of his portion of the Hoffman House stock, the said W. E. D. Stokes represented that Read had offered to sell said stock to him, and that he proposed to purchase all of Read's stock for the joint account of himself and the plaintiff (aside from certain shares of preferred and common stock which E. S. Stokes had already purchased from Read for his own account) so that W. E. D. Stokes and Edward S. Stokes might together own the entire capital stock of the corporation. The plaintiff then alleged that in reliance on the representation of the defendant, who then held all of Read's stock under pledge, he made and executed the said contract of August 18, 1891, with the defendant. After alleging certain facts surrounding the manner in which said contract was entered into, he further alleged certain negotiations and agreements between himself and W. E. D. Stokes whereby it was mutually agreed that the parties should abandon the agreement of August 18, 1891. The plaintiff further alleged that he had offered and was willing to pay the indebtedness of $34,300 on the return and surrender to him of the said 125 Hoffman House bonds and 30 United Lines Telegraph Company bonds. But the defendant refused to return said collaterals and claimed the right to enforce payment of said notes and to retain said securities. The said E. S. Stokes thereupon set up the commencement of the actions in the Superior Court, which were subsequently consolidated into one action, and which is the action now before the court; and alleged that W. E. D. Stokes claimed among other things the right to hold said Hoffman House bonds and United Lines Telegraph bonds against an indorsement or guaranty given by the plaintiff on a note of $13,000 made by Read, as collateral to which W. E. D. Stokes held 1,963 shares of Hoffman House common stock; and that the defendant claimed that the agreement of August 18, 1891, was still enforcible by him, and that he had the right to hold the plaintiff's securities indefinitely as against any foreclosure of the Hoffman House mortgage, *although he never, in fact, made the purchases of stock intended to be protected against such foreclosure.* Said Edward S. Stokes demanded judgment enjoining the defendant from further prosecuting the said action in the Superior Court,

and that the defendant be adjudged to hold the 125 Hoffman House bonds and the 30 United Lines Telegraph bonds as securities only for the payment of the notes sued upon, and that on payment of said notes with interest the defendant surrender said securities to the plaintiff, and for certain other relief. Annexed to said complaint was the agreement of August 18, 1891, and the summons and complaints in the Superior Court actions.

On or about the 19th of November, 1892, W. E. D. Stokes served his answer in the Supreme Court action. He admitted the allegations of indebtedness and deposit of collaterals, denied the value of the securities, and alleged that he had no knowledge or information to form a belief as to the relations between Edward S. Stokes and Cassius H. Read. He also alleged that whatever representations were made by W. E. D. Stokes were made or had during negotiations between the defendant and the plaintiff, which resulted in the execution of the contract of August 18, 1891. The answer then alleged that the contract was deliberately entered into and was executed on or before August 24, 1891, after numerous conferences and negotiations were had between the parties to the contract. The answer then denied that W. E. D. Stokes had made any agreement by which said contract of August 18, 1891, was abandoned or modified in any respect. The said W. E. D. Stokes then alleged that the plaintiff prior to the 18th of October, 1892, proposed and asserted his willingness to pay the indebtedness and interest arising upon the notes mentioned in the complaint upon the return and surrender to him of said 125 Hoffman House bonds and 30 United Lines Telegraph bonds, but no valid tender was made prior to the 15th of November, 1892, on which day the plaintiff made a tender of the principal and interest of said indebtedness together with the costs in the two actions pending in the Superior Court upon said promissory notes (being this action), and that said tender was then made upon condition that the defendant should deliver to the plaintiff all of said securities; that the defendant had theretofore offered and at the time of said tender offered, and in said answer offered to deliver unconditionally the said 30 United Lines Telegraph bonds upon the receipt of the moneys described in said tender, but as to the 125 Hoffman House bonds the said W. E. D. Stokes had theretofore claimed, and at the

time of said tender claimed, and still claims, to hold ·a lien upon
them beyond and in addition to the payment of the notes and
interest and costs, and prior and at the time of said tender asserted,
and in his answer alleged, that his claims in that regard were based
in part upon said written agreement of August 18, 1891, and that
he held the same for the purposes therein recited. The defendant
denied that plaintiff's liability on said notes became merged in and
a part of the agreement set forth in the complaint, and denied that
the liability of the plaintiff on said notes as provided in said agree-
ment of August 18, 1891, had been modified or altered in any
respect. W. E. D. Stokes further alleged in his answer that, under
the terms of said agreement of August 18, 1891, the amount of
Hoffman House bonds stated to have been deposited with the
defendant was $150,000, of which $125,000 thereof and no more
had been deposited with the defendant, and that said E. S. Stokes,
although frequently requested so to do, had neglected and refused,
and still neglects and refuses, to make the deposit with the defend-
ant of the 25 additional bonds as required by the terms of said
agreement.

The answer further alleged that a certain note of $15,000 made
by said Cassius H. Read was one of the obligations of the plaintiff
referred to and described in the agreement of August 18, 1891, and
that he claimed the right to hold said Hoffman .House bonds as col-
lateral for the payment of said note of $15,000. The defendant
admitted that the plaintiff had tendered the amount due on said
$15,000 note with interest, and alleged that said tender was made
upon condition that the collateral security of said note, which said
collateral security was the property of said Read and to which the
plaintiff had no right. or possession, should be surrendered and deliv-
ered to the plaintiff.

The defendant W. E. D. Stokes further answering, by way of
counterclaim repeating all the allegations, admissions and denials in
said answer contained, alleged that at all times since the making,
execution and delivery of said contract of August 18, 1891, he had
been and was then entitled to have deposited with him by the plain-
tiff the whole of said bonds of said Hoffman House to the par value
of $150,000 to be held by him as security pursuant to the terms and
provisions of said agreement of August 18, 1891, and that plaintiff

had neglected and refused, and still neglects and refuses, to make such deposit with him of twenty-five of said bonds, although frequently requested so to do to his wrong, injury and damage, and judgment is demanded that the complaint be dismissed, with costs; that said E. S. Stokes was not entitled to an injunction, and that he be required to deliver and deposit with W. E. D. Stokes additional Hoffman House bonds to the par value of $25,000 or the value thereof in cash, to be held by said W. E. D. Stokes pursuant to the agreement of August 18, 1891, and for such other and further relief as to the court should seem just.

The said E. S. Stokes in January, 1893, replied to the counterclaim. He denied that said W. E. D. Stokes since the execution of the contract of August 18, 1891, had been or was entitled to have deposited with him Hoffman House bonds of the par value of $150,000, or that said W. E. D. Stokes was entitled to hold such amount as security pursuant to the terms and provisions of the agreement of August 18, 1891. He admitted the refusal to deposit said bonds, and reiterated his allegations in the complaint of an agreement between the parties that the contract of August 18, 1891, should be abandoned; and, further replying, claimed that the construction asked by the defendant to be placed upon said contract of August 18, 1891, was inequitable, and that the terms and conditions thereof were so indefinite, uncertain and oppressive that it would be inequitable to enforce them.

The trial of the issues thus raised between the parties resulted in a judgment by which it was adjudged that the complaint be dismissed, without costs, and by which it was further adjudged that the cause of action set forth in the defendant's counterclaim be dismissed *on the merits*, without costs. If the judgment had stopped here it would have been a complete adjudication. But it goes on further and gives a reason for the adjudication. After adjudging that the plaintiff was not, at the time of the commencement of the action, entitled to the temporary injunction granted to him (which necessarily followed from the dismissal of his complaint), it further adjudged that the true construction of the contract of August 18, 1891, was that the understanding of the parties was that the defendant should purchase from Read the whole of his 1,963 shares of stock, or such portion thereof as should be sufficient to make the

parties to said contract the sole owners of the stock of the Hoffman House corporation; in other words, the defendant was to buy the whole of said stock, or such portion thereof as the plaintiff should not buy; and it further adjudged that the defendant not having purchased said stock of Read within a reasonable time from such contract, and the proof being that he had been unable to purchase by reason of the refusal of Read to sell, the contract *cannot* be enforced against the plaintiff. Not "ought not" but "cannot;" and it was because the contract could not be enforced against Edward S. Stokes that the counterclaim of W. E. D. Stokes was dismissed upon the merits. Now it is difficult to see, if there was any vitality in the contract of August 18, 1891, why the court should have held, not that it was inequitable to enforce the contract, but that, because of failure of consideration, the contract *could* not be enforced. The validity and enforcibility of that contract was the question which was decided, and the claim under that contract was dismissed upon the merits. Such being the adjudication, no other or additional claim could ever be made by virtue of that contract by W. E. D. Stokes.

Section 1209 of the Code of Civil Procedure seems to dispose of the question as to any right to maintain any action upon that contract by anybody, the counterclaim which was founded upon that agreement having been dismissed upon the merits. The section is as follows: "A final judgment dismissing the complaint, either before or after a trial, rendered in an action hereafter commenced, does not prevent a new action for the same cause of action, unless it expressly declares, or it appears by the judgment roll, that it is rendered upon the merits."

This section recognizes the rule that, in actions tried before the court without a jury, or before a referee, where the complaint is dismissed upon the merits, the judgment is a bar to any new action for the same cause of action; and it seems to have been adopted in order that there should be no uncertainty, such as had previously existed in this country, as to whether a bill was so dismissed as to be a bar to a new action or not. In England the rule of the Court of Chancery was that where the decree dismissing a bill makes no reservation it may be pleaded in bar to any new bill for the same

matter. (Dan. Ch. Pr. 1199.) It is, however, recognized that although the dismissal of a bill for the specific performance of an agreement does not carry with it an implied injunction against a subsequent proceeding at law, it is, nevertheless, the constant practice of the court to insert in the decree of dismissal of such a bill, that it should be without prejudice, etc. (P. 1200.) But where it was intended that it should operate as a bar to an action at law, it was the practice of the court to restrain such action by injunction in the decree. In consequence, however, of the abolition of the distinction between actions at law and suits in equity in this State, such form of judgment became inapplicable, and it was the practice, in cases where a bill was dismissed and such dismissal was founded upon the fact that the plaintiff had no right to relief whatever, to dismiss the complaint upon the merits; and such dismissal was always deemed a bar to any other action. A dismissal in this form being equivalent to the injunction in the old chancery practice.

In this State, both prior to the Code and under the Code, the practice was settled in actions at law that a plaintiff could be non-suited after all the evidence on both sides had been received and both parties had rested, whether such action was tried before the court with a jury, or by the court without a jury, or before a referee, and a simple dismissal of the complaint in either form of action was not a bar to the maintenance of a new action. Where, however, the dismissal was upon the merits, the judgment in that form was a bar to any other action for the same cause. But in equity, even where such words were not contained in the judgment, it was frequently a question as to whether, the merits of the controversy between the parties having been gone into, the simple dismissal should not be held to be equally a bar; and to avoid any uncertainty as to whether the judgment was intended to be a bar or not, and to make the practice in all forms of action the same, this section 1209 was introduced into the Code of Civil Procedure, it not having formed a part of the Code of Procedure which preceded it. It is apparent from an inspection of this judgment that the learned court which directed its entry had sharply in mind this distinction, because the plaintiff having offered no proofs in support of the allegations of his complaint, such complaint was dismissed simply. The issues which were tried were those raised by the

counterclaim and reply, and those issues having been determined upon the merits, and to the effect that the agreement sought to be established by the counterclaim could not be enforced because of a failure of consideration, that counterclaim was dismissed *upon the merits*, the court adjudging that, because of a failure of consideration, W. E. D. Stokes had no rights which he could enforce because of the provisions of that contract. This view of the judgment is emphasized if we consider the findings upon which the judgment in question was founded, which, however, we cannot legitimately do in a case like the present, where the judgment is clear and unambiguous and certainly not for the purpose of nullifying its provisions, among which is a finding that the only consideration for the guaranties made by the plaintiff in the contract, and for the additional security from him therein provided for that was proved upon the trial, was an agreement to purchase Read's Hoffman House common stock, and the further agreement that the plaintiff should have the privilege of buying from the defendant one-half of the stock that the defendant should purchase from Read at the price paid for the same. This judgment would, therefore, seem to be conclusive as to the rights of the parties under that contract, because it has been established, as between the parties, that it has no other consideration than that which has failed.

It is certainly clear that if W. E. D. Stokes had brought an action for damages because of his failure to deposit the twenty-five bonds referred to in the contract, the judgment in question would have been an absolute bar to such a suit : and if he cannot enforce any rights in this particular under the contract, because he had sapped it of its vitality by reason of his failure to comply with those things which were required of him under said contract, I cannot see upon what principle he could hold the other parts of the contract which depended upon precisely the same consideration.

An appeal was taken from this judgment to the General Term of the Supreme Court, and the judgment was there reversed. An appeal from such reversal was taken to the Court of Appeals, where the judgment of the General Term was reversed and that of the Special Term affirmed, sustaining the construction given to the contract by the court at Special Term.

In the case at bar the learned court below held that, notwith-

standing this adjudication, in view of the construction placed upon the rights of the parties by an opinion of one of the judges of the Court of Appeals, concurred in by two only of his associates delivered upon the appeal from the judgment in this action which was affirmed by said court, the plaintiff had the right to hold the bonds in question as security, *first,* for the guaranties referred to ; *second,* for a loan of about $32,000, represented by the notes in suit ; *third,* for any obligation of Edward S. Stokes to the plaintiff connected with Read, and, *fourth,* against any foreclosure of the mortgage ; thereby nullifying the express finding contained in the judgment in the equity action before referred to, that the only consideration which had been proved for the guaranties made by Edward S. Stokes was the purchase of Read's stock by W. E. D. Stokes, which consideration had failed.

In this, we think, the learned court erred. There has not yet been any adjudication by the court of last resort that the judgment in the equity action has not established that, because of the failure of consideration, the agreement of August 18, 1891, could not be enforced.

The fourth judge who concurred in the affirmance of the judgment in this action in the Court of Appeals puts his decision expressly upon the ground that Edward S. Stokes had failed in showing, upon the previous trial of this action, that the bonds were held by the plaintiff for the payment of the notes *and for no other purpose,* and that they were not held upon some consideration independent of the agreement of August 18, 1891, expressly reserving any expression of opinion as to whether, on account of the failure of the principal part of the consideration of the contract, it should not be, or had not been, held to be abrogated as a whole, thus leaving the question, both as to the effect of the adjudication upon that contract and as an original proposition, open and undetermined. Even if it is admitted that the adjudication in the equity suit (the nature of which, it seems to me, was to some extent overlooked by the learned court above in discussing the question on appeal before it, because that adjudication was not an answer to the question: " Ought specific performance under the circumstances to be now decreed ? " but " Is it possible to decree such specific performance, the consideration for the contract having failed ? ") was not conclu-

sive upon the question of consideration, it seems to me that the contract will be searched in vain to find any obligation to be performed by W. E. D. Stokes, except the purchase of Read's stock, and to sell the half of that which was purchased to Edward S. Stokes at the price paid for the same. The only other agreement upon the part of W. E. D. Stokes is that neither of the parties will sell any of his stock in the Hoffman House without first consulting with and offering the same to the other — which is a covenant entirely negative in its character, and evidently not intended to form the basis of any consideration for the covenants, guaranties and agreements contained in the contract upon the part of Edward S. Stokes.

But it is said that, because of a finding contained in the judgment roll in the equity suit that the contract had not been abandoned, as claimed by Edward S. Stokes, therefore, the adjudication in question did not establish the fact that the contract of August 18, 1891, could not be enforced. This finding is to be considered, in view of the issue which was presented, namely, it was claimed by Edward S. Stokes that by an agreement the contract had been abandoned; this was denied by W. E. D. Stokes; and the court held that there was no sufficient evidence establishing the claim that the contract had been abandoned by agreement; and that was all that it then decided. But it further held that the contract was unenforcible, because it had been sapped of its vitality by reason of the failure of W. E. D. Stokes to do that which formed the consideration for the contract. It was immaterial whether it had been abandoned by the parties or not, if the consideration had failed and it could not be enforced. Under such circumstances the contract would be ended whether both parties agreed to such a result or not. Either could insist upon the fact that it had become null and void, even against the will of the other. Therefore, such being the effect of the evidence offered, under the decision of the Court of Appeals when this case was heretofore before it for consideration, the question remaining to be determined was whether Edward S. Stokes has proven that, outside of the contract of August 18, 1891, there was any other agreement under which these securities were held. Evidence upon both sides was offered upon this issue, and we think that it was a question for the jury to determine, and that it could not be disposed

of by the court. Neither in the opinions of the Court of Appeals, which held that this contract was in force, nor by the counsel for the respondent, has there been pointed out a single iota of consideration for the contract of August 18, 1891, except W. E. D. Stokes' agreement to purchase the Read stock, which it is conceded he has not done. It is said in those opinions that the consideration for the contract was the mutual covenants and agreements of the parties; but what covenant or agreement, other than for the purchase of the stock which such contract contained, to be performed by W. E. D. Stokes, has not yet been indicated.

It would seem, therefore, that the judgment in the equity suit was conclusive as to the enforcibility of the contract of August 18, 1891; and that, therefore, the question should have been submitted as to whether, outside of the contract, there was any agreement upon a sufficient consideration, under which the plaintiff in this action had a right to hold the bonds in question.

There is, however, still another error which necessitates a new trial. The learned trial justice directed a verdict for the plaintiff and thus, as matter of law, dismissed the counterclaim. It is difficult to see upon what principle he refused to submit to the jury the questions of fact, which, by his ruling as to the equity judgment, were left entirely undetermined. When he decided that the judgment was not conclusive upon the plaintiff's right to hold the bonds as security against any foreclosure of the Hoffman House mortgage, that left the case, for the purposes of that trial, practically as though the judgment were not in existence. The question of the plaintiff's right to hold the bonds under the contract was then *res nova;* and indeed the learned justice so treated it. That necessitated the submission to the jury of several questions of fact which seem at this stage of the case to have been entirely overlooked. There was the question as to whether the contract had been abrogated. There was also the question as to whether there had been a breach on the plaintiff's part of the essential covenant to purchase the stock, and which was the only consideration for the contract. There was the still further question as to whether the plaintiff had in fact notified the defendant that he would not purchase the stock; that he had determined not to proceed under, or fulfill, the contract; that instead of fulfilling the contract, his pur-

pose was to make another arrangement with Read, whereby he would secure the latter's West Virginia lands, and thus "get a great deal more money out of it than he could by buying any more stock in the Hoffman House," and had thereby barred himself from making any claim under the contract. There was conflicting evidence upon all these questions, which, in view of the main ruling, should plainly have been submitted to the jury. If the jury had found that the plaintiff had failed within a reasonable time to purchase the stock, or had made no effort to purchase it, or had refused to purchase it, or had informed the defendant that he would not purchase it — upon all of which questions there was ample evidence for their consideration — it is difficult to see by what right the plaintiff could still hold the bonds under the contract. That would involve the proposition that he could keep them indefinitely. It would be preposterous to hold that he could thus retain for all time securities which he held *as indemnity for a transaction which was to go into operation only when he purchased the stock, and which never did go into operation because he never purchased the stock.*

We say that the learned justice must have overlooked these questions, for he certainly could not have supposed they were foreclosed by any finding in the equity suit, if the judgment in that suit had in fact been rejected and treated as inconclusive. But, as we have shown, the finding that the contract had not been abandoned was not conclusive as to the non-enforcibility of the contract in any aspect of the equity case. It was not necessary to the judgment, and it related solely to an abandonment by the agreement of the parties, not certainly to an abrogation by a breach of the contract; for the latter was found as a fact in the very judgment which followed this finding of non-abandonment. It is clear, therefore, that the learned justice could not have ruled, as he did, upon the theory that while the equity judgment itself was not *res adjudicata*, the findings which preceded it were. It seems to have been taken for granted by the court, in view of the elaborate discussion as to the conclusiveness of the judgment, that the issue of the trial depended exclusively upon the ruling on that head. We can account in no other way for the refusal to submit the questions of fact which, upon the learned justice's view of the judgment, were distinctly presented for the decision of the jury.

There are other exceptions in the record to rulings upon. the admission and exclusion of evidence; but, as they may not arise upon a new trial, we need not now further consider them.

The exceptions should be sustained and a new trial ordered, with costs to the defendant to abide the event.

BARRETT and INGRAHAM, JJ., concurred; RUMSEY and McLAUGH-LIN, JJ., dissented.

McLAUGHLIN, J. (dissenting):

When this case was before the Court of Appeals, on appeal from the former judgment (155 N. Y. 581), a majority of the members of that court held that the trial court properly directed a verdict in favor of the plaintiff, because the. defendant failed to establish his counterclaim by proving that the bonds were " held by the plaintiff as collateral for the payment of the notes and for no other purpose." This is the law of the case, and there can be no doubt that the verdict, upon which the judgment from which the present appeal is taken, was properly directed, unless upon the trial evidence was introduced which would have justified the jury in finding that the bonds referred to were held as collateral security for the payment of the notes and *for no other purpose.*

After a careful consideration of the record, I am entirely satisfied that the defendant not only failed to introduce evidence from which a finding to that effect could have been made, but, on the contrary, the evidence is uncontradicted that the bonds were held not only as collateral security for the payment of the notes, but also for the faithful performance by Edward S. Stokes of all of the covenants specified in the 6th paragraph of the agreement of August eighteenth one of which was against the foreclosure of the Hoffman House mortgage.

If I am right in this conclusion, then it necessarily follows that the verdict was properly directed and that the exceptions should be overruled and the motion for a new trial denied. It is contended, however, that this conclusion is erroneous, for the reason that it has been determined in another action between the same parties (148 N. Y. 708) that the contract of August 18, 1891, had been abrogated, because W. E. D. Stokes had not purchased from Read all of the 1,963 shares of stock referred to in the contract. I do not

think such determination was made in that action, and it seems to me to be a misapprehension of the issues involved therein to accord to the judgment such effect. The construction or effect of the August agreement was not involved in the issues there tried and determined. In that action the only issue between the parties which was *actually* tried and determined was (1) whether the agreement of August 18, 1891, had been abrogated or abandoned, and (2) if it had not then whether E. S. Stokes — in view of the fact that W. E. D. Stokes had not purchased all of the Read stock — ought in equity to be required to specifically perform it by depositing $25,000 additional bonds. That this was the issue, and the only one, seems to me clear from a reference to the pleadings and what is conceded to have taken place upon the trial, and the findings made by the trial court. It will be remembered that after the actions brought in the Superior Court had been consolidated into the present action, Edward S. Stokes brought an independent action, in which he sought to restrain the prosecution of this action until after the trial of the other action, substantially upon the ground that the contract of August 18, 1891, had been abandoned. The allegation of his complaint in that action, as to the contract of August eighteenth, was "that subsequent to the execution and delivery of the said contract, the defendant purchased from Read 500 shares of common stock, part of the 1,963 shares of said stock referred to in paragraph seven of said agreement, and after making such purchase, the defendant applied to the plaintiff to be relieved from the further performance of said contract. The said defendant, for the purpose of inducing the plaintiff to relieve him from further obligations under said contract, represented to the plaintiff that said Read was not, at that time, disposed to sell his holdings of said stock, on terms that it would be advisable to accept, but that he was in immediate need of money and would convey" to W. E. D. Stokes his interest in a large tract of land in Virginia, West Virginia and Kentucky, as security for such money as William might thereafter loan to said Read, and for Read's indebtedness arising out of the partnership transactions of C. H. Read & Co., as well as to secure the debt owing by Read to the Hoffman House. "It was thereupon agreed between the plaintiff and the defendant that the defend-

ant should acquire Read's interest in said tracts of lands, \* \* \* for the joint security of himself and this plaintiff, and of the Hoffman House Company, and that he should hold the interest of the plaintiff and of the Hoffman House Company, in said lands, as such security, and that the said $125,000 of Hoffman House bonds \* \* \* should continue to be held as security for the aforesaid indebtedness of $34,300 and interest, represented by the promissory notes above set forth." The complaint further alleged that " *This plaintiff, on his part, agreed with the defendant, in consideration of the above stated agreement by the defendant, to relieve the latter from his obligation to make further purchases of Hoffman House stock from Read, under the agreement of August 18, 1891, and the parties to that contract thereupon abandoned the same.*"

The judgment demanded in that action was that W. E. D. Stokes be enjoined from prosecuting this action upon the notes; that he be adjudged to hold the $125,000 Hoffman House bonds as security only for the payment of the notes and that on payment of said notes, with interest, he surrender said securities; that he also be adjudged to hold the title to the Virginia, West Virginia and Kentucky lands as security for the repayment to him of sums advanced by him to Read, and to secure any and all indebtedness from Read to the Hoffman House, from Read to E. S. Stokes, arising out of the partnership accounts of C. H. Read & Co., and that he account to E. S. Stokes for said lands and convey to him the interest which he had agreed to convey.

The answer interposed in that action admitted the making of the contract of August eighteenth, but denied that it had ever been abandoned, or that a supplemental agreement had been made in reference to the subject-matter of it; and alleged affirmatively, and as a counterclaim, that that contract was still in force and by its terms W. E. D. Stokes was entitled to have deposited with him $150,000 Hoffman House bonds, " as security, pursuant to the terms and provisions of said agreement dated August 18, 1891;" that E. S. Stokes had only deposited $125,000 of such bonds, and judgment was demanded that E. S. Stokes be directed to specifically perform the contract by depositing the $25,000 additional bonds. To this counterclaim E. S. Stokes served a reply, in which he alleged in substance, that after the contract of August eighteenth was made,

W. E. D. Stokes had purchased 500 shares of the 1,963 shares of stock provided for in that agreement, and then had applied to E. S. Stokes to be relieved from the further performance of the contract, and that E. S. Stokes, in consideration of W. E. D. Stokes giving him an interest in certain lands in Virginia, West Virginia and Kentucky, had agreed to relieve W. E. D. Stokes from the further performance of the contract of August 18, 1891, "*and the parties to that contract thereupon abandoned the same.*" He further alleged that if the contract had not been abandoned, it would be "inequitable" to require him to specifically perform it.

At the trial, E. S. Stokes offered no evidence to sustain the allegations of his complaint, and in open court consented that the same be dismissed. W. E. D. Stokes insisted upon trying the counterclaim set up in his answer, and this was the issue, and the only one, tried in that action. What was it? Whether the contract of August eighteenth had been abandoned, and if, it had not, whether, in view of the fact that W. E. D. Stokes had not purchased all of the stock from Read, E. S. Stokes should be required to specifically perform by putting up the $25,000 additional bonds. Edward S. Stokes in his reply thus gave two reasons why W. E. D. Stokes should not succeed upon his counterclaim. The first was that the contract under which he claimed had been abandoned, and the second was that if it had not been abandoned then it would be inequitable to require E. S. Stokes to specifically perform it, because William had not yet performed it on his part. Each of these propositions was put in issue and all the evidence introduced was directed to those issues. It is apparent that if E. S. Stokes had succeeded in showing that the contract had been abandoned he would for that reason have procured a dismissal of the counterclaim, but if he had failed upon that issue and established his second defense to the counterclaim he would have succeeded in dismissing it all the same. It is evident by the findings that the trial court so understood the case. It found that "Since the making, execution and delivery of said contract or agreement, the parties thereto have not agreed to abandon the same, or to modify it in any respect, *and it has not been abandoned*," but that E. S. Stokes ought not to be compelled to specifically perform it.

It is apparent, therefore, that both of these questions were

.necessarily litigated on the trial of that counterclaim. It is so well settled as hardly to require the citation of authorities that an . allegation in a reply upon which issue has once been taken and judgment rendered, is conclusive *according to the finding thereof* so as ·to estop the parties respectively from again litigating the facts once :so tried and found. (*Embury* v. *Conner,* 3 N. Y. 511, 522; *Leavitt* v. *Wolcott,* 95 id. 212, 219.)

Upon the issue of the abandonment of the contract there was an ᐦexpress finding, and upon that issue W. E. D. Stokes succeeded, and ˑwhen the court held that that contract had not been abandoned that ˑquestion was finally determined between the parties. E. S. Stokes failed upon that issue, and he was remitted for his recovery to the second defense in his reply and upon that he succeeded. If the court had found that the contract had been abandoned and was at an end nobody would question but that the issue so found would have been conclusive between the parties. What is there to change the effect of this finding when it is the other way? It is said that that finding goes for naught because the counterclaim was dismissed upon the merits. But what were the merits? The merits of the action involved the right to the specific performance of the contract *then* upon the facts *then* appearing. As long as the contract was held to be in force as it was, it cannot be said that the contract, that was determined by the judgment still to be in existence, was abro- :gated solely because at the time of the trial it had not been per- ·formed by the party seeking relief under it.

The defendant's position in this case in this regard requires him absolutely to ignore the finding of the court upon his first defense, :and to insist that although he was beaten upon that it is neverthe- less a determination in his favor in that regard because he succeeded ᴀpon the second issue.

Under the circumstances, whether specific performance should be ˑdecreed was a matter for the trial court. The right to have specific performance, by a decree of a court of equity, always rests in the ːsound discretion of the trial court. But it is said that because the ·court determined, in that action, as a conclusion of law, that W. E. D. Stokes not having purchased all of the Read stock within a reasonable time, and for that reason the contract could not be ᴇnforced against E. S. Stokes, and the judgment so provides, that

this, in effect, was an adjudication that the contract had failed and that it could not thereafter be enforced. But the judgment in this respect must be read in the light of the issues involved, as determined by the pleadings, and also in connection with the findings; and when thus read, the only natural, legitimate or logical conclusion or inference that can be drawn is that E. S. Stokes could not *then* be required to deposit the $25,000 additional bonds, inasmuch as William had not *then* purchased all the stock called for. It did not go to the extent of destroying the contract itself. It did not relieve W. E. D. Stokes from performing the covenants specified in the contract on his part to be performed. He then held 500 shares of stock which he had purchased from Read, one-half of which, under the 7th clause of the contract, he was obligated to sell to E. S. Stokes at the same price for which he had purchased. Could it be urged with any force that after that judgment was rendered E. S. Stokes could not have compelled W. E. D. Stokes to transfer one-half of that stock? It seems to me not. It also seems to me clear that if W. E. D. Stokes had thereafter purchased the balance of the Read stock, E. S. Stokes could have acquired one-half of it by complying with the contract. If E. S. Stokes had not consented to the dismissal of the complaint, it is undoubtedly true that then the question of whether the bonds in suit were held as collateral security for the payment of the notes and for no other purpose, might and necessarily would have been determined. He alleged that fact in his complaint; it was denied in the answer. But by offering no testimony in support of the allegations in the complaint, and consenting to its dismissal, he, in effect, so far as the issue was then involved, put the parties in precisely the same legal position in which they would have been had W. E. D. Stokes brought an action for specific performance of the contract, by requiring Edward to put up the $25,000 additional bonds, and Edward had interposed an answer denying his right to have specific performance, on the ground (1) that the contract of August eighteenth had been abandoned, and (2) that it would be inequitable, inasmuch as W. E. D. Stokes had not purchased all of the Read stock, to require him to do so. W. E. D. Stokes' right to hold the $125,000 in bonds, which he then held, was not involved in the issue tried. It was an immaterial fact. It was not necessary

to, and it in no way depended upon, the determination of the issue there raised, and the judgment rendered did not and could not, even though it purported to, determine or affect the rights of the parties on that subject. The rule is well settled that a judgment is conclusive *only* in respect to the grounds covered by it, and the facts necessary to uphold it, and although it in express terms purports to determine a particular fact, yet, if such fact were immaterial to the issue and the controversy did not turn upon it, the decree will not conclude the parties in reference to it. It is only the material, the relevant and necessary facts decided in an action that are finally and conclusively determined by the judgment rendered. (*Campbell* v. *Consalus*, 25 N. Y. 613; *Woodgate* v. *Fleet*, 44 id. 1; *People ex rel. Reilly* v. *Johnson*, 38 id. 63; *Stowell* v. *Chamberlain*, 60 id. 272; *Stannard* v. *Hubbell*, 123 id. 520; *Springer* v. *Bien*, 128 id. 99; *House* v. *Lockwood*, 137 id. 259.)

This rule is well illustrated in *Campbell* v. *Consalus* (*supra*). There the action was brought to procure the cancellation of a mortgage upon the ground that it had been paid, and the pleadings put in issue that fact. The trial court found that the mortgage had not been paid and that the sum of $2,754 remained unpaid. In a subsequent action to foreclose the mortgage, the court held that the prior judgment was conclusive upon the parties *only* as to the fact that something was due, but not the amount.

In *Woodgate* v. *Fleet* (*supra*) Judge EARL, referring to this rule, said: "A judgment is conclusive upon the parties thereto only in respect to the grounds covered by it, and the law and facts necessary to uphold it; and although a decree in express terms purports to affirm a particular fact or rule of law, yet, if such fact or rule of law was immaterial to the issue, and the controversy did not turn upon it, the decree will not conclude the parties in reference thereto." In *Stowell* v. *Chamberlain* (*supra*) Judge ALLEN said: "Stated in another form, the rule is that the judgment of a court of competent jurisdiction, directly upon the point, is as a plea, a bar, and as evidence conclusive between the same parties upon the same matter directly in question in another action or court. (*Barrs* v. *Jackson*, 1 Y. & C. 585.) A matter or cause of action is *res judicata* when it is actually merged in a judgment, or the same point has already been

decided between the same parties; and if by law a judgment could have been given for the plaintiff, in a former suit, for precisely the same cause of action as that for which the present suit is brought, it has, within the rule, passed into judgment and is *res judicata.* But, in order to bar the second action, the circumstances must be such that the plaintiff might have recovered in the first for the same cause alleged in the second." And in *Stannard* v. *Hubbell* (*supra*) the head note, which seems fairly to state the ground of the decision, is that: " Only material, relevant and necessary facts decided in an action are conclusively determined thereby; the judgment does not operate as an estoppel in a subsequent action between the parties, as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided."

The question whether W. E. D. Stokes held the $125,000 in bonds — which he then held as collateral security for the payment of the notes in suit, and for no other purpose — as I have already said, was not considered in that action. It was not passed upon by the court, and under the condition of the pleadings, after E. S. Stokes had consented to the dismissal of the complaint, it could not have been there determined. It was not a relevant or necessary fact to be determined in that case, and, therefore, the learned trial justice, at the conclusion of the trial which resulted in the judgment from which the present appeal is taken, correctly held that that question was an open one; that it was not controlled or affected in any way by the former judgment, except so far as that judgment necessarily established that the contract was still in force and that it must be passed upon and determined *de novo.* He then construed the contract of August eighteenth, and held: " That at the time of the tender of November 15th, 1892, the plaintiff had the right to con. tinue to hold the bonds in suit as collateral security against the obligation of the defendant not to foreclose the mortgage " on the Hoffman House. This construction was substantially the same as that given by Judge Martin (155 N. Y. 581), in which at least two of his associates agreed. Judge Martin said : " As the judgment in the former action between the parties was not conclusive against the right of William to hold the bonds remaining in his hands as security for all the claims provided for in the agreement of August eighteenth, I think they may be held for all the guaranties contained in

that agreement * * * as well as against any foreclosure of the mortgage mentioned therein. That contract was not so far entire that the purchase of all of Read's 1,963 shares of stock by William was a condition precedent to the enforcement of the rights conferred upon him by the provisions of that agreement. Indeed, it is manifest from the contract itself that the parties contemplated the situation which actually arose as to the inability of William to purchase all the snares owned by Read. This is shown by the portion which states that he is about to purchase of Read the remainder of his stock, *or a portion thereof,* with the intent that the parties may be the owners of the whole, and by the further provision that William was to sell and transfer to Edward, at the price paid, one-half of the whole, *or of such portion of the 1,963 shares as he might purchase from* Read. * * * The consideration for the contract of August eighteenth was the mutual covenants and agreements of the parties. The provisions to be kept or performed by William have been performed by him, except so far as he has been unable to purchase all of the 1,963 shares of stock then owned by Read. He purchased all Read would sell. He could do no more. As we have already seen, the probable impossibility of purchasing all of this stock was understood by the parties when the agreement was made. But there was no provision that in that event the contract should become invalid or inoperative, or that it should not bind the parties as to its other provisions, which could be performed. To say that there was a failure of the consideration for this contract is not, I think, correct. Nor do I understand that this court intended to hold that there was such a failure of the consideration as to render the contract inoperative. I think the condition which ultimately existed was not only contemplated by the parties, but that they intended that in case of the inability of William to purchase the Read stock, the remainder of the contract should continue in force. This seems manifest from the provisions and purpose of the agreement which was to carry on the business of managing the hotel, restaurant and café connected with the Hoffman House and for the management of the business of the corporation, as well as from the provision showing that the possibility of his being unable to purchase the whole of the Read stock was contemplated when the agreement was made." The learned trial justice also held that inasmuch as the plaintiff had the

right to hold the bonds to indemnify him against any damage he might sustain by reason of the foreclosure of the Hoffman House mortgage, that the defendant had failed to establish his counterclaim under the decision of the Court of Appeals (155 N. Y. 581), by proving that the bonds were " held by the plaintiff as collateral for the payment of the notes and for no other purpose." The construction thus put upon the contract by the learned trial justice seems to me to be the correct one, and I am also of ' the opinion that he was right in holding that the defendant had failed to establish his counterclaim within the rule laid down by the Court of Appeals.

But it is suggested in the prevailing opinion that when the learned trial justice held that the judgment in the other action was not conclusive upon the plaintiff's right to hold the bonds in suit as security against a foreclosure of the Hoffman House mortgage, that necessitated the submission to the jury of certain questions of fact, among others (1) whether the failure to purchase all of the Read stock constituted a breach on plaintiff's part; (2) whether plaintiff had notified defendant that he would not purchase all the stock; and (3) whether the contract had been abrogated. These questions and the others suggested were necessarily disposed of by the judgment in the other action. The construction of the contract was for the court, and whether the contract had been abrogated or abandoned, prior to the tender of the amount due upon the notes and the demand for the return of the bonds, was finally and conclusively settled by the judgment in the other action. In the other action, as has already been indicated in this opinion, the principal issue was whether the contract of August eighteenth had been, by act of the parties or either of them, terminated. The court found, when the defendant made the tender of the amount due upon the notes and demanded the return of the bonds referred to in the complaint in this action, that it had not — that it was still in force, and that settled and determined for all time that question. The parties could not thereafter question that fact or relitigate it in a subsequent action between them. The general rule is that the judgment of a court of competent jurisdiction is final and conclusive upon the parties not only as to the matters actually determined, but as to every

·other matter which the parties might have litigated in the cause, and might have had determined. (*Embury* v. *Conner*, 3 N. Y. 511; *White* v. *Coatsworth*, 6 id. 137; *Pray* v. *Hegeman*, 98 id. 351; *Jordan* v. *Van Epps*, 85 id. 436; *Smith* v. *Smith*, 79 id. 634; *Clemens* v. *Clemens*, 37 id. 74.)

Every fact which it is suggested should have been submitted to the jury, bearing upon an abandonment or an abrogation of the contract, came within the issue in the other action, and necessarily was there determined.

For the foregoing reasons I am of the opinion that the verdict was properly directed for the plaintiff, and that the exceptions should be overruled and the motion for a new trial denied.

RUMSEY, J., concurred.

Exceptions sustained and new trial ordered, with costs to defendant to abide event.